**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| | : | |
| In re: | : | Civil Action No. 11-02526 (PBT) |
| | : | |
| STONE RESOURCES, INC., | : | |
| | : | |
| Debtor | : | |
| | : | |

**BRIEF OF APPELLEE STONE RESOURCES, INC.**

**PAUL J. WINTERHALTER, P.C.**
1717 Arch Street, Suite 4110
Philadelphia, PA 19103
Telephone: (215) 564-5050
Facsimile: (215) 564-5597

Paul J. Winterhalter, Esquire
Attorney I.D. 38643
Corinne M. Samler, Esquire
Attorney I.D. 206121

*Attorneys for Appellee Stone Resources, Inc.*

## **TABLE OF CONTENTS**

TABLE OF CONTENTS..................................................................................................ii

TABLE OF AUTHORITIES ........................................................................................iii

I.     COUNTER-STATEMENT OF ISSUES PRESENTED ....................................1

II.    STANDARD OF REVIEW ...............................................................................1

III.   COUNTER-STATEMENT OF THE CASE .....................................................3

     A.    Introduction................................................................................................3

     B.    Statement of Facts.....................................................................................4

         i.     The Franchise Agreement ...........................................................4

         ii.    The Arbitration.............................................................................5

         iii.   The District Court Litigation .......................................................7

         iv.   The Bankruptcy Proceeding........................................................10

         v.    The Order and Memorandum Opinion .......................................12

             a.    Conclusions of fact .......................................................13

             b.    Conclusions of law........................................................14

IV.   ARGUMENT ...................................................................................................18

     A.    The Bankruptcy Court Did Not Err In Denying the Motion of
         MarbleLife to Dismiss the Debtor's Bankruptcy Case Pursuant to
         11 U.S.C. § 1112(b), and the Order Should Be Affirmed .....................18

     B.    The Bankruptcy Court Did Not Err In Denying the Motion of
         MarbleLife to Terminate the Automatic Stay Pursuant to 11 U.S.C.
         § 362(d), and the Order Should be Affirmed.........................................24

     C.    The Bankruptcy Court Did Not Issue an Advisory Opinion or Decide
         An Issue that Was Not Before It, and the Order Should be Affirmed.................32

V.    CONCLUSION.................................................................................................39

# TABLE OF AUTHORITIES

## CASES

Air Line Pilots Ass'n v. Continental Airlines, 125 F.3d 120 (3d Cir. 1997).........................33, 34

Am. Airlines, Inc. v. Continental Airlines, Inc.
(In re Continental Airlines, Inc.), 152 B.R. 420 (D. Del. 1993) ....................................31

Anderson v. Bessemer City, 470 U.S. 564 (1985).........................................................................3

Borman v. Raymark Indus., Inc., 946 F.2d 1031 (3d Cir. 1991) ..................................24

Brodsky v. Philadelphia Athletic Club, Inc.
(In re Philadelphia Athletic Club, Inc.), 9 B.R. 280 (Bankr. E.D. Pa. 1981)................................26

Carolin Corp. v. Miller, 886 F.2d 693 (4th Cir. 1989) ...........................................18, 22

First Nat'l Bank of Denver v. Turley, 705 F.2d 1024 (8th Cir. 1983)...........................................26

Folger Adam Security, Inc. v. Dematteis/MacGregor JV,
209 F.3d 252 (3d Cir. 2000)................................................................................28

Holtkamp v. Littlefield (In re Holtkamp), 669 F.2d 505 (7th Cir. 1982) ......................................26

In re 3036 Richmond, Inc.,
2001 Bankr. LEXIS 303 (Bankr. E.D. Pa. Mar. 13, 2001) ..........................................28

In re All Am. Props., Inc.,
2010 Bankr. LEXIS 1286 (Bankr. M.D. Pa. Apr. 15, 2010) .................................29, 30

In re Babcock & Wilcox, 200 U.S. Dist. LEXIS 6448 (E.D. La. 2000)......................................29

In re Ben Franklin Hotel Assocs., 186 F.3d 301 (3d Cir. 1999).............................................34, 35

In re Bobridge, 81 B.R. 332 (Bankr. E.D. Pa. 1988) ................................................................26

In re Brown, 311 B.R. 409 (E.D. Pa. 2004)................................................................................25

In re Bruce, 2000 Bankr. LEXIS 746 (Bankr. E.D. Pa. July 10, 2000)..................................24, 26

In re DCNC North Carolina I, LLC, 407 B.R. 651 (Bankr. E.D. Pa. 2009)....................19, 22, 23

In re Drehsen, 190 B.R. 441 (M.D. Fla. 1995) ..........................................................................2

In re Edler, 416 B.R. 147 (Bankr. E.D. Pa. 2009) ...................................................................25

In re Elmira Litho, Inc., 174 B.R. 892 (Bankr. S.D.N.Y. 1994)......................................27

In re Forest Hill Funeral Home & Mem'l Park,
364 B.R. 808 (Bankr. E.D. Okla. 2007)..........................................................................23

In re Garland Corp., 6 B.R. 456 (1st Cir. BAP 1980).....................................................29

In re Glunk, 342 B.R. 717 (Bankr. E.D. Pa. 2006).........................................................25

In re Integrated Telecom Express, Inc., 384 F.3d 108 (3d Cir. 2004) ......................19, 22

In re Keene Corp., 171 Bankr. 180 (Bankr. S.D.N.Y. 1994)..........................................27

In re Kilpatrick, 160 B.R. 560 (Bankr. E.D. Mich. 1993) .........................................35, 36

In re Merchant, 256 B.R. 572 (Bankr. W.D. Pa. 2000) .................................................25

In re Munsey Corp., 10 B.R. 864 (Bankr. E.D. Pa. 1981) .............................................29

In re Muratone Co., Inc., 198 B.R. 871 (E.D. Pa. 1996) ..................................................2

In re Olick, 221 B.R. 146 (Bankr. E.D. Pa. 1998) .........................................................28

In re Planned Sys., Inc., 78 Bankr. 852 (Bankr. S.D. Ohio 1987)..................................27

In re Primestone Inv. Partners L.P., 272 B.R. 554 (D. Del. 2002) .................................23

In re RBGSC Inv. Corp., 253 B.R. 352 (E.D. Pa. 2000) ...............................................19

In re SB Props., Inc., 185 B.R. 198 (E.D. Pa. 1995)..................................................2, 18

In re Schmid, 53 B.R. 70 (Bankr. E.D. Pa. 1985)..........................................................26

In re SGL Carbon Corp., 200 F.3d 154 (3d Cir. 1999)..............................................18, 19

In re Stranahan Gear Co., Inc., 67 B.R. 834 (Bankr. E.D. Pa. 1986) ...........................26

In re Swedeland Dev. Group, 16 F.3d 552 (3d Cir. 1994)...............................................2

In re Telegroup, Inc., 237 B.R. 87 (Bankr. D. N.J. 1999) .............................................25

In re Torwico Elecs., 8 F.3d 146 (3d Cir. 1993)............................................................34

In re Tribune Co., 418 B.R. 116 (Bankr. D. Del. 2009) ............................................30, 31

Izzarelli v. Rexene Prods. Co. (In re Rexene Prods. Co.),
141 B.R. 574 (Bankr. D.Del. 1991) ..............................................................24

Langenkamp v. Culp, 498 U.S. 42 (1990) ..............................................................34

Little Creek Dev. Co. v. Commw. Mortgage Corp. (In re Little Creek Dev. Co.),
779 F.2d 1068 (5th Cir. 1986) ..............................................................18

Marcus Lee Assocs., L.P. v. Wachovia Bank, N.A. (In re Marcus Lee Assocs., L.P.),
2011 U.S. Dist. LEXIS 5372 (E.D. Pa. Jan. 20, 2011) ......................................................2

Marsch v. Marsch (In re Marsch), 36 F.3d 825 (9th Cir. 1994) ......................................18

Monsour Med. Ctr., Inc. v. Stein (In re Monsour Med. Ctr., Inc.),
154 Bankr. 201 (Bankr. W.D. Pa. 1993)..............................................................18

Ohio v. Kovacs, 469 U.S. 274 (1984)..............................................................33

Opticians Ass'n of Am. v. Independent Opticians of Am.,
920 F.2d 187 (3d Cir. 1990)..............................................................31

Phoenix Piccadilly v. Life Ins. Co. of Va. (In re Phoenix Picadilly),
849 F.2d 1393 (11th Cir. 1988) ..............................................................18

Rocco v. J.P. Morgan Chase Bank,
2006 U.S. Dist. LEXIS 12850 (W.D. Pa. Mar. 24, 2006) ............................................28

Sonnax Indus., Inc. v. Tri Component Prods. Corp.
(In re Sonnax Indus., Inc.), 907 F.2d 1280 (2d Cir. 1990) ............................................27

St. Croix Condo. Owners v. St. Croix Hotel, 682 F.2d 446 (3d Cir. 1982)..................................24

Trident Assocs. Ltd. P'ship v. Metro. Life Ins. Co.
(In re Trident Assocs. Ltd. P'ship), 52 F.3d 127 (6th Cir. 1995) ......................................18

## STATUTES

11 U.S.C. § 101..............................................................33

11 U.S.C. § 362..............................................................24, 25

11 U.S.C. § 1112..............................................................18

11 U.S.C. § 1141..............................................................33

## RULES

Federal Rule of Bankruptcy Procedure 8013 ............................................................2, 12

## OTHER AUTHORITY

Epstein, et al., Bankruptcy, § 3-25 at 267 (1992) ........................................................29

H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 340 (1977) ...............................................24

Tex. Bus. Com. Code § 15.51(a) ................................................................................35

Appellee Stone Resources, Inc. (the "Debtor"), a debtor in a Chapter 11 bankruptcy proceeding previously before the Honorable Magdeline D. Coleman of the United States Bankruptcy Court for the Eastern District of Pennsylvania, submits this brief (the "Brief of the Appellee") in response to the opening brief (the "Brief of the Appellant") filed by MarbleLife, Inc. ("MarbleLife").  MarbleLife, through its counsel, has appealed from the March 2, 2011 Order (the "Order") and accompanying Memorandum Opinion dated March 28, 2011 (the "Memorandum Opinion") of the United States Bankruptcy Court for the Eastern District of Pennsylvania denying the motion filed by MarbleLife for an order dismissing the Debtor's bankruptcy case or, in the alternative, terminating the automatic stay (the "Motion").

## I.  COUNTER-STATEMENT OF ISSUES PRESENTED

A.  Whether the Bankruptcy Court erred in denying the Motion filed by MarbleLife to dismiss the Debtor's bankruptcy case pursuant to 11 U.S.C. § 1112(b)?

**Suggested Answer:** No.

B.  Whether the Bankruptcy Court erred in denying the Motion filed by MarbleLife to terminate the automatic stay pursuant to 11 U.S.C. § 362(d)?

**Suggested Answer** No.

C.  Whether the Bankruptcy Court issued an advisory opinion or decided an issue that was not properly before it?

**Suggested Answer:** No.

## II.  STANDARD OF REVIEW

While the Debtor generally does not disagree with MarbleLife's recitation in the Brief of the Appellant of the legal standard for review of this appeal, there are additional standards that MarbleLife did not acknowledge.  Pursuant to the Federal Rules of Bankruptcy Procedure:

On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings.  Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and <u>due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses</u>.

Fed. R. Bankr. P. 8013(c) (emphasis added).

At the hearing on this matter, the Debtor provided the testimony of four separate witnesses in support of its opposition to the Motion; MarbleLife, on the other hand, presented no witnesses or witness testimony and, therefore, no oral evidence.  Furthermore, MarbleLife has argued that the Debtor's bankruptcy case should be dismissed for bad faith, or that the automatic stay should be terminated for cause, based on bad faith or lack of adequate protection.  <u>See</u> Brief of the Appellant at 11-12, 27.  "Whether bad faith actually exists in a particular case is a question of fact," which is therefore subject to the strict standard of review that a finding of fact be "clearly erroneous" for it to be set aside.  <u>In re SB Props., Inc.</u>, 185 B.R. 198, 204 (E.D. Pa. 1995); <u>see</u> <u>also</u> Fed. R. Bankr. P. 8013(c).  Similarly, the "Third Circuit has held that a "bankruptcy court's conclusion that [a party] had adequate protection [is] a factual finding which [is] reviewed using the deferential clearly erroneous standard.""  <u>Marcus Lee Assocs., L.P. v. Wachovia Bank, N.A. (In re Marcus Lee Assocs., L.P.)</u>, 2011 U.S. Dist. LEXIS 5372, *3 (E.D. Pa. Jan. 20, 2011) (citing <u>In re Swedeland Dev. Group</u>, 16 F.3d 552, 558 (3d Cir. 1994) (citations omitted)).

MarbleLife also has the burden of proving that the Bankruptcy Court's findings of fact are clearly erroneous.  <u>E.g.</u>, <u>In re Drehsen</u>, 190 B.R. 441, 442 (M.D. Fla. 1995).  In order to find that the Bankruptcy Court's findings of fact are clearly erroneous, the District Court must find that a reasonable fact finder could not have reached the same factual conclusions.  <u>See</u> <u>In re Muratone Co., Inc.</u>, 198 B.R. 871 (E.D. Pa. 1996), judgment aff'd, 111 F.3d 126 (3d Cir. 1997).

Where there are two possible views of the evidence of record, the findings of fact cannot be considered clearly erroneous.  See Anderson v. Bessemer City, 470 U.S. 564, 574-75 (1985) ("If the [trial] court's account of the evidence is plausible in light of the record viewed in its entirety, the [appeals court] may not reverse it even though convinced that had it been sitting as a trier of fact, it would have weighed the evidence differently.  Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous").

## III.    COUNTER-STATEMENT OF THE CASE

### A.    Introduction

On February 16, 2011 (the "Petition Date"), the Debtor filed a voluntary petition for bankruptcy relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").  See Appellate Record ("A.R."), Doc. 1.  Shortly thereafter, on February 22, 2011, MarbleLife filed the Motion which is the subject of this appeal, which requested that the Bankruptcy Court enter an Order dismissing the Debtor's bankruptcy case for cause or, in the alternative, terminating the automatic stay for cause.  See A.R., Doc. 4.  At the hearing on the Motion, which was held on March 2, 2011, the Debtor vigorously defended itself and provided a multitude of documentary and oral evidence in support of its opposition to the Motion.  See A.R., Doc. 19.  That same day, the Bankruptcy Court denied the Motion in its entirety and filed a supporting Memorandum Opinion on March 28, 2011 pursuant to Local Rule of Bankruptcy Procedure 8001-1(b).[1]  See A.R., Doc. 18, 19.

---

[1] Local Rule of Bankruptcy Procedure 8001-1(b) provides: "Opinion in Support of Order.  The bankruptcy judge whose order is the subject of an appeal may, within 14 days of the filing of the notice of appeal, file a written opinion in support of the order or a written supplemental opinion that amplifies any earlier written opinion or recorded oral bench ruling or opinion."

B.   <u>Statement of Facts</u>

    i.   **The Franchise Agreement**

On April 3, 2000, the Debtor entered into a franchise agreement (the "Franchise Agreement") with MarbleLife to operate a MarbleLife franchise in certain areas of Pennsylvania, New Jersey, and Delaware.  <u>See</u> A.R., Doc. 28.  The term of the Franchise Agreement was for ten (10) years.  <u>See</u> <u>id</u>.  The Franchise Agreement contained, among other things, a covenant not to compete (the "Noncompetition Covenant") which was to be enforceable for a period of two (2) years after the expiration of the Franchise Agreement.  <u>See</u> <u>id</u>.

The Debtor entered into the Franchise Agreement with MarbleLife in April of 2000 based on certain representations made by MarbleLife that it owned certain patents and trademarks which could be exclusively used in the operation of a business enterprise, that it possessed and exclusively controlled certain unique business formats which could be used in the operation of a marble and stone restoration and refinishing business, and that MarbleLife would provide customers and potential customer leads in consideration of the Debtor paying royalty fees based on a percentage of its gross revenues.  <u>See</u> A.R., Doc. 23, ¶ 14.  The Debtor dutifully paid all franchise fees, royalties, and advertising assessments which accrued during the term of the Franchise Agreement.  <u>See</u> <u>id</u>. at ¶ 15.  Despite MarbleLife providing some leads during the ten (10) years of the Franchise Agreement, MarbleLife never provided any actual customers or national customer accounts which it promised when the parties were originally negotiating the Franchise Agreement.  <u>See</u> <u>id</u>. at ¶ 16.

MarbleLife does not possess, own, control, or have a proprietary ownership interest in any business format that is or can be used in the restoration, preservation, cleaning, repair, or care of marble, granite, or other types of organic or inorganic surfaces.  <u>See</u> A.R., Doc. 23, ¶ 17.

4

The Franchise Agreement had nothing to do with the preservation, cleaning, surfacing, coating, or protection of concrete floors or surfaces.  See generally A.R., Doc. 28.  The Debtor discontinued any use of any patented technology allegedly owned by MarbleLife as of December 2008.  See A.R., Doc. 23, ¶ 19.

Prior to that time, and during the term of the Franchise Agreement, the Debtor used the patented product Interlok on but a handful of occasions.  See A.R., Doc. 23, ¶ 20.  Every customer the Debtor has ever serviced was located, had their contract negotiated, and had their work performed by the Debtor.  See id. at ¶ 21.  The Debtor also learned that MarbleLife was using a grossly disproportionate amount of advertising contributions paid by all franchisees under the franchise agreements for operating expenses of the franchisor and its corporate owned business entities.  See id. at ¶ 22.  At or near the time for the expiration of the Franchise Agreement, MarbleLife requested that the Debtor consider renewing the Franchise Agreement for an additional ten (10) year term.  See id. at ¶ 23.  The Debtor did not renew the Franchise Agreement once it expired.  See id. at ¶ 24.

### ii.    The Arbitration

The Franchise Agreement entered into between the Debtor and MarbleLife expressly provided that any disputes relating to the interpretation and enforcement of the agreement were exclusively vested in a commercial arbitration proceeding to be conducted before a panel of one to three arbitrators who are members of the American Arbitration Association (the "AAA").  See generally A.R., Doc. 28.  On or about April 9, 2010, six (6) days after the expiration of the Franchise Agreement, the Debtor filed an arbitration demand (the "Arbitration Demand") against MarbleLife with the AAA.  See A.R., Doc. 23, ¶ 26.  The Arbitration Demand alleged causes of action against MarbleLife for breach of contract, fraud, negligent misrepresentation, and

violation of the Texas Deceptive Trade Practices Act relating to patents and advertising funds. See id. at ¶ 27.  The Arbitration Demand further sought to void the Franchise Agreement, including all rights which MarbleLife could claim remained due or entitled to it under the Franchise Agreement, expressly including any rights or protections afforded pursuant to the Noncompetition Covenant for a period of two (2) years following the expiration of the Franchise Agreement, along with additional monetary damages in the amount of $150,000.00 and a request for attorney's fees and arbitration costs.  See id. at ¶ 28.

On or about May 7, 2010, MarbleLife filed an answering statement and counterclaim in the arbitration (the "Arbitration") which denied the claims contained in the Arbitration Demand and asserted counterclaims against the Debtor for breach of conduct, federal trademark infringement, federal false designation of origin, federal dilution of trademark, Texas common law trademark infringement, Texas common law unfair competition, tortuous interference with contract, unjust enrichment, misappropriation of trade secrets, and conversion.  See A.R., Doc. 23, ¶ 29.  The response and counterclaim of MarbleLife asserted that it was seeking recovery of damages between $500,000 and $1,000,000, including the profits of the Debtor, lost profits and royalty fees of MarbleLife, treble damages, punitive or exemplary damages, prejudgment interest, post-judgment interest, attorney's fees, legal costs, and the costs of arbitration.  See id. at ¶ 30.  MarbleLife also sought an accounting from the Debtor through the arbitration, and a permanent injunction.  See id. at ¶ 31.

The Arbitration was scheduled to begin April 11, 2011 and would have adjudicated the issue of whether the Franchise Agreement was entered into based on a fraudulent inducement by MarbleLife and was therefore voidable, as well as whether MarbleLife is entitled to enforce any portion of the Noncompetition Covenant.  See A.R., Doc. 23, ¶ 32.  Rather than take advantage

of the expedited procedures available for injunctive relief under the Commercial Rules of the

AAA, MarbleLife instead chose to institute a separate legal proceeding against the Debtor for

injunctive relief in the United States District Court for the Eastern District of Pennsylvania in an

action captioned *MarbleLife, Inc. v. Stone Resources, Inc.*, Civil Action No. 2:10-cv-02480

(PBT) (the "District Court Litigation").

### iii.     The District Court Litigation

On May 21, 2010, MarbleLife separately commenced the District Court Litigation

against the Debtor by asserting many of the same claims MarbleLife had made in the Arbitration,

including breach of contract, federal trademark infringement, federal false designation of origin,

federal dilution of trademark, and common law trademark infringement.  See A.R., Doc. 31.  By

the same complaint, MarbleLife also requested the issuance of a preliminary injunction.  See id.

MarbleLife was prohibited by the terms of the Franchise Agreement from seeking monetary

damages in the District Court Litigation, though significant monetary damages were specifically

sought by MarbleLife in the Arbitration proceeding.  See A.R., Doc. 28.  Apart from the

complaint, MarbleLife separately requested that the District Court enter a preliminary injunction

(the "Motion for Preliminary Injunction") which, *inter alia*, would enjoin the Debtor from

conducting any business until a final ruling was reached in the Arbitration.  See A.R., Doc. 31.

The Debtor denied the allegations and asserted various affirmative defenses to the complaint

pursuant to an answer which was filed in the District Court Litigation on July 1, 2010.  See A.R.,

Doc. 23, ¶ 38.

The Debtor separately filed a response in opposition to the Motion for Preliminary

Injunction on July 16, 2010.  See A.R., Doc. 23, ¶ 39.  MarbleLife sought, and was granted, the

opportunity to seek limited discovery.  See id.  On December 23, 2010, after a hearing was held

on the Motion for Preliminary Injunction, the District Court entered an order (the "First Preliminary Injunction Order") and memorandum opinion granting the Motion for Preliminary Injunction.  See A.R., Docs. 35, 36.  Among other things, the First Preliminary Injunction Order required that, within fifteen (15) business days, the Debtor was to provide MarbleLife with a list of its existing customers since May 2000, copies of all invoices for those customers, and a list of all other telephone numbers, facsimile numbers, and email addresses.  See A.R., Doc. 35.  The First Preliminary Injunction Order further required the Debtor to cease and desist from engaging in any business in four (4) counties in Pennsylvania, one (1) county in Delaware, four (4) counties in New Jersey, or any other county in the United States where MarbleLife has a franchise or company office, (i) in offering any service or product related to the restoration, repair, and care of marble, granite, concrete, and other types of inorganic and organic surfaces, (ii) in the treatment, coating, and sealing of such surfaces, and (iii) in the restoration, repair, and care of grout.  See id.

The Debtor had done business solely in these aforementioned counties for the last ten (10) years.  See A.R., Doc. 23, ¶ 43.  The First Preliminary Injunction Order prevented the Debtor from operating or conducting any business whatsoever pending a resolution of the Arbitration in which the substantive rights of the parties were to be adjudicated.  See A.R., Doc. 35.  Shortly after the First Preliminary Injunction Order was entered by the District Court, on January 3, 2011, the Debtor filed a motion requesting that the District Court reconsider and vacate portions of the First Preliminary Injunction Order that were permanent in nature and which restricted the Debtor from operating its business to the extent it engaged in practices which did not involve any process or format in which MarbleLife held a proprietary property interest (the "Motion for Reconsideration").  See A.R., Doc. 37.  Contemporaneous with the

filing of the Motion for Reconsideration, the Debtor also filed a motion requesting that

MarbleLife post bond pursuant to the requirements of Federal Rule of Civil Procedure 65(c).

<u>See</u> A.R., Doc. 23, ¶ 45.

On January 6, 2011, MarbleLife filed a motion with the District Court which sought an

award of the attorney's fees it supposedly incurred as a result of the Motion for Preliminary

Injunction.  <u>See</u> A.R., Doc. 23, ¶ 46.  The motion sought an astonishing $412,000, which

MarbleLife requested the Debtor pay.  <u>See</u> <u>id</u>.  On January 12, 2011, MarbleLife filed responses

in opposition to the Motion for Reconsideration and the motion for bond.  <u>See</u> <u>id</u>. at ¶ 47.  Also

on January 12, 2011, MarbleLife filed an emergency motion for civil contempt against the

Debtor for failing to comply with the First Preliminary Injunction Order, and requested sanctions

in the form of a fine and compensation for lost revenues.  <u>See</u> <u>id</u>. at ¶ 48.  The Debtor filed a

response opposing the excessive request for an assessment of attorney's fees against it on

January 20, 2011, and the Debtor also filed a response in opposition to the emergency motion for

civil contempt on January 24, 2011.  <u>See</u> <u>id</u>. at ¶¶ 49, 50.  MarbleLife filed a reply to that

response on January 28, 2011.  <u>See</u> <u>id</u>. at ¶ 50.

A hearing was held before the Honorable Petrese B. Tucker on February 3, 2011, during

which the Motion for Reconsideration, the motion for bond, the motion for civil contempt, and

the motion to assess attorney fees, which were allegedly incurred by counsel in obtaining the

preliminary injunction, were considered.  On Friday, February 11, 2011, the District Court

entered an order granting the request of the Debtor that a bond be posted by MarbleLife.  <u>See</u>

A.R., Doc. 23, ¶ 52.  The order was not docketed or available and known to the parties until

Monday, February 14, 2011.  Also on Friday, February 11, 2011, the District Court entered an

Order which denied both the Motion for Reconsideration filed by the Debtor and the motion for

civil contempt filed by MarbleLife, but also revised the First Preliminary Injunction Order (the "Second Preliminary Injunction Order," together with the First Preliminary Injunction Order the "Preliminary Injunction Orders").  See A.R., Doc. 41.  The Second Preliminary Injunction Order was also not docketed and known to the parties until Monday, February 14, 2011.

The Second Preliminary Injunction Order changed the deadlines for compliance with certain provisions of the First Preliminary Injunction Order and clarified that the ruling by the District Court was not a substantive ruling, did not make a final, enforceable ruling with regard to the rights or obligations of the parties under the Franchise Agreement, and that those issues were properly preserved for the pending Arbitration.  See A.R., Doc. 41.  The Second Preliminary Injunction Order, however, still prevented the Debtor from conducting any of its normal business in certain areas in which it had been operating, and in which its customer based was located.  See id.  The effect of the Second Preliminary Injunction Order resulted in a complete inability for the Debtor to generate any operating revenues whatsoever.  See A.R., Doc. 23, ¶ 56.  The Debtor was aware of the extremely high litigation costs associated with the pending Arbitration, and that it would be unable to make payment on account of such costs and expenses without operating revenues.  See id. at ¶ 57.  As a result of the foregoing, the Debtor was required to file a voluntary petition for relief under Chapter 11.

### iv.      The Bankruptcy Proceeding

The Debtor commenced its bankruptcy proceeding upon the filing of a voluntary petition under Chapter 11 of the Bankruptcy Code on February 16, 2011.  See A.R., Doc.1.  As a debtor-in-possession, the Debtor has been permitted to remain in control of its assets and its financial affairs pursuant to the authority set forth under 11 U.S.C. §§ 1107 and 1108.  A trustee has not been appointed in the bankruptcy case.  A debtor-in-possession is the same entity that existed

before the bankruptcy filing, but is empowered to deal with its contracts and property in a manner consistent with the provisions of the Bankruptcy Code.

On February 22, 2011, the Debtor opened an adversary proceeding by filing a complaint against MarbleLife for a declaratory judgment as to the scope of the automatic stay with regard to the Preliminary Injunction Orders, among other things (the "Complaint for Declaratory Judgment"). On that same day, and subsequent to the filing of the Complaint for Declaratory Judgment, the Debtor also filed a motion in the adversary proceeding for immediate declaratory relief (the "Expedited Motion for Declaratory Relief"). See A.R., Doc. 23. Also on February 11, 2011, MarbleLife filed the Motion, which requested an order dismissing the bankruptcy case or, in the alternative, terminating the automatic stay. See A.R., Doc. 4. The Debtor filed a response to the Motion on March 1, 2011, and MarbleLife filed a response to the Expedited Motion for Declaratory Relief on March 2, 2011. See A.R., Docs. 8, 26.

The hearings on both the Expedited Motion for Declaratory Relief and the Motion for dismissal or termination of the automatic stay were held on March 2, 2011. For reasons stated in open court, the Honorable Magdeline D. Coleman of the United States Bankruptcy Court for the Eastern District of Pennsylvania denied the relief sought by MarbleLife in their Motion and continued the hearing on the Expedited Motion for Declaratory Relief. See A.R., Doc. 19. On March 3, 2011, after the Order had been entered denying the Motion, the Debtor voluntarily dismissed the adversary proceeding against MarbleLife, and on March 14, 2011, MarbleLife filed a notice of appeal from the Order. Shortly thereafter, on March 28, 2011, a Memorandum Opinion was filed on the bankruptcy docket in support of the Order.

Shortly after the Order and Memorandum Opinion were entered by the Bankruptcy Court denying MarbleLife dismissal of the bankruptcy case or termination of the automatic stay,

11

MarbleLife, desperate for relief by this point, filed a motion in the District Court on April 1, 2011 requesting that Joseph Smith ("Mr. Smith"), the sole corporate fiduciary of the Debtor, be personally held in contempt of the Preliminary Injunction Orders. Specifically, this renewed attempt at a motion for contempt, which was clearly an effort to evade the Order entered by the Bankruptcy Court, sought fines, attorney fees and costs, and an order enjoining Mr. Smith from competing with MarbleLife. On April 15, 2011, the Debtor filed a response on behalf of Mr. Smith in opposition to the motion to hold Mr. Smith in contempt. Shortly thereafter, on April 25, 2011, the Court entered an Order summarily denying the motion to hold Mr. Smith in contempt without holding a hearing on the matter.

### v.     The Order and Memorandum Opinion

On March 2, 2011, the Bankruptcy Court entered the Order which denied the Motion of MarbleLife seeking an order (a) dismissing the bankruptcy case or (b) terminating the automatic stay. See A.R., Doc. 18. Shortly thereafter, and consistent with L.B.R. 8001-1(b), the Bankruptcy Court entered a Memorandum Opinion in support of that Order. The Bankruptcy Court dedicated almost five (5) pages of the Memorandum Opinion to conclusions of fact which "shall not be set aside unless clearly erroneous." F.R.B.P. 8013. In the Memorandum Opinion, the Bankruptcy Court noted that the Debtor "presented testimony from several witnesses," and that the parties also "stipulated to the admission of testimony from two other witnesses" who testified on behalf of the Debtor. Memorandum Opinion, p. 4-5. As aforementioned, MarbleLife presented no testimonial evidence in support of the Motion, and instead "relied upon its Motion, certain documents including the Orders issued by the District Court in the District Court Litigation, and argument of its counsel." Id. at 4.

### a.     Conclusions of fact

Based on the oral evidence presented in opposition to the Motion by the Debtor, the Bankruptcy Court specifically noted the testimony of Mr. Smith as instructive on the matter.  Mr. Smith "testified that the Debtor filed bankruptcy because it was in financial distress;" not only did the Debtor not have sufficient income to fund an appeal from the Preliminary Injunction Orders or the Arbitration, the Preliminary Injunctions "prevented the Debtor's continued operations."  Memorandum Opinion, p. 4.  Twelve employees of the Debtor had been laid off, and the Debtor was still subject to the motion which was pending at the time in the "District Court Litigation seeking a judgment in the amount of $400,000 for attorney fees, statutory costs, and expenses."  Id.  With respect to the property and continuing obligations of the Debtor, the Bankruptcy Court noted the testimony of Mr. Smith that "the Debtor was servicing several maintenance contracts with various property management companies," and that the Debtor owns and operates a fleet of leased vehicles that are stored at a facility in Media, Pennsylvania, "a property that is also leased by the Debtor."  Id.  Furthermore, the Bankruptcy Court noted that the Debtor had an outstanding loan facility with Sovereign Bank (the "Sovereign Bank Loan") with "a present balance of approximately $87,500.00."  Id.  The Bankruptcy Court then aptly noted that, because the Debtor was no longer able to operate, the Debtor was no longer "able to make payments on the Sovereign Bank Loan or to any of its other creditors."  Id.

The Bankruptcy Court additionally concluded that, in providing services, the "Debtor is using nonproprietary techniques."  Memorandum Opinion, p. 4.  Furthermore, the Bankruptcy Court noted that "if the Debtor was permitted to continue its business operations as a debtor-in-possession, the Debtor would not be required to use any of [MarbleLife's] intellectual property."  Id. at 5.  MarbleLife submitted no evidence on this point to the contrary.  The Bankruptcy Court

further observed based on the factual record before it that "at least 15 other companies in the Debtor's geographic region restore and maintain marble, granite, terrazzo and concrete, none of whom rely" on the techniques and processes used by MarbleLife.  Id.

Of critical importance to the purpose of the bankruptcy process, the Bankruptcy Court also noted that if the Debtor was permitted to operate, "the Debtor would have the resources necessary to fund its reorganization, including the payment of any claim held by [MarbleLife] arising from the enforcement of the [Noncompetition Covenant]."  Memorandum Opinion, p. 5. The Bankruptcy Court also took as persuasive the testimony of Richard Ritacco ("Mr. Ritacco"), the publisher of Distinctive Living magazine.  Mr. Ritacco testified that his business "was and would be negatively impacted as a result of the Debtor's ceasing its business operations."  Id. The Debtor and MarbleLife further stipulated to the testimony from two other witnesses, whose commercial office buildings had executory contracts for the Debtor to provide maintenance at their respective buildings, and who indicated their intent to retain the services of the Debtor, if the Debtor was permitted to operate.  Id.

### b.    Conclusions of law

The Bankruptcy Court correctly concluded in the Order and Memorandum Opinion that the bankruptcy case of the Debtor should not be dismissed for bad faith, nor should the automatic stay be terminated for cause.  In consideration of MarbleLife's first argument, the Bankruptcy Court noted that MarbleLife relied on "two facts as evidence of the Debtor's bad faith: (1) the Debtor's decision to initiate [the] bankruptcy proceeding two days after the District Court filed the [Second Preliminary Injunction Order]; and (2) the Debtor's inability to organize."  Memorandum Opinion, p. 6.  The Bankruptcy Court correctly noted that "[b]ad faith is a factor that justifies dismissal," but that the timing of the filing of the bankruptcy case did not indicate

"in and of itself, that the Debtor [had] acted in bad faith." Id. at 6-7.  In support of this conclusion, the Bankruptcy Court noted that the Third Circuit Court of Appeals had recognized that adverse litigation which places a debtor in financial distress constitutes a legitimate reason for filing bankruptcy. Id. at 7.

The Bankruptcy Court further correctly refused to find an inference that "the Debtor otherwise lacks a reorganizational purpose." Memorandum Opinion, p. 7.  The Bankruptcy Court noted that "[i]n no sense may the Debtor be considered a financially healthy debtor." Id. Not only did the Debtor cease "to have the means to fund its obligations," the Debtor "has several other creditors who will be adversely affected by the Debtor's inability to operate its business." Id.  The Debtor was simply "attempting to preserve its value as a going concern that would in turn maximize the value of the bankruptcy estate," which is a purpose "consistent with a finding that the Debtor has acted in good faith." Id.  Furthermore, the Bankruptcy Court concluded that the Debtor "believes and has presented evidence that supports a finding that if granted the opportunity to reorganize, the Debtor will have sufficient resources to formulate and to present a viable plan of reorganization." Id.  The Bankruptcy Court thus correctly concluded that the Debtor had filed its petition in good faith because "the Debtor was in financial distress when it filed for chapter 11 relief and…the Debtor's petition will preserve the Debtor as a going concern that will in turn maximize the value of the Debtor's estate." Id. at 7-8.

The Bankruptcy Court also correctly concluded that MarbleLife had failed to carry the initial burden to show that it was entitled to termination of the automatic stay, including for bad faith or lack of adequate protection.  With respect to the bad faith argument, the Bankruptcy Court adopted the reasoning and legal conclusions it set forth in its analysis of the request that the case be dismissed.  Memorandum Opinion, p. 8.  The Bankruptcy Court noted that to meet its

burden on adequate protection, MarbleLife was required to demonstrate that it possessed "an interest in property, and that the value of its interest is declining as a result of the continued operation of the automatic stay." Id. at 9.

The Bankruptcy Court correctly concluded that MarbleLife failed to make a showing that would establish its interest, or that the value of its interest was declining. Memorandum Opinion, p. 9. The Bankruptcy Court correctly noted that, instead of making this showing at the hearing, MarbleLife inappropriately relied on the District Court's finding of irreparable harm in the District Court Litigation. Id. Not only did the Preliminary Injunction Orders fail to provide an analysis of elements identical to the elements required for relief from the automatic stay, the Preliminary Injunction Orders did not make a final enforceable ruling. Id. at 9-10. Thus, the Bankruptcy Court correctly concluded that MarbleLife had failed to carry the initial burden to show that it was entitled to relief from the automatic stay. The Bankruptcy Court further noted that, even if MarbleLife had carried the initial burden with regard to establishing an interest in property, MarbleLife had failed to carry its burden "with regard to whether the value of its interest is declining." Id. at 10. In coming to an ultimate conclusion that "the rubric of adequate protection is inapplicable to [the] consideration of whether [MarbleLife] is entitled to relief from the automatic stay," the Bankruptcy Court noted that the goal of adequate protection is to protect a secured party's interest in collateral. Id.

Lastly, the Bankruptcy Court addressed certain issues raised by the Debtor in its filed pleading in opposition to the relief requested by MarbleLife and by counsel for MarbleLife at the hearing, including whether cause existed to grant MarbleLife relief from the automatic stay to enforce the Preliminary Injunction Orders. Memorandum Opinion, p. 11-12. The Bankruptcy Court properly applied a three-prong test to identify whether MarbleLife's request for relief had

16

any merit.  Id. at 12.  In coming to the conclusion that it did not, the Bankruptcy Court noted that both the Debtor and the estate would be greatly prejudiced by continuation of the litigation and the hardship to MarbleLife did not outweigh the hardship to the Debtor.  Id.  If the stay was lifted, the Bankruptcy Court noted that the Debtor would not be able to resume business operations and would be forced to incur substantial costs that it clearly could not pay, which would eliminate any value of the Debtor as a going concern.  Id. at 12-13.

Although the Bankruptcy Court did find persuasive the issuance of the Preliminary Injunction Orders in the District Court Litigation for the probability of success on the merits factor, the Bankruptcy Court also clearly found significant to its analysis of the three prong factors the fact that the District Court did not weigh the harm to the Debtor's estate in the District Court Litigation, and that the Preliminary Injunction Orders were "not determinative of the balance of harms between the Debtor's estate and [MarbleLife]."  Memorandum Opinion, p. 13-14.  Furthermore, the Bankruptcy Court found that a cease in the operations of the Debtor would leave "little or no assets available to fund the Debtor's estate."  Id. at 13.  The Bankruptcy Court also noted as persuasive the evidence produced by the Debtor which showed that since "at least 15 other companies now compete with a potential franchisee of [MarbleLife], the Debtor's continued operation should not have a material impact on the ability of [MarbleLife] to secure a replacement franchisee."  Id. at 13-14.  Lastly, the Bankruptcy Court saw "no reason why [MarbleLife], like any other judgment creditor, cannot be made whole through the claims process."  Id. at 14.  Based on this thoughtful analysis, the Bankruptcy Court denied the relief sought by MarbleLife.  The Bankruptcy Court's careful ruling was not clearly erroneous.

IV.     **ARGUMENT**

A.      **The Bankruptcy Court Did Not Err In Denying the Motion of
         MarbleLife to Dismiss the Debtor's Bankruptcy Case Pursuant to
         11 U.S.C. § 1112(b), and the Order Should Be Affirmed**

In the Brief of the Appellant, MarbleLife argues that the Bankruptcy Court erred when it

denied the Motion of MarbleLife to dismiss the bankruptcy case for cause pursuant to 11 U.S.C.

§ 1112(b).  Section 1112(b) of the Bankruptcy Code does not specifically identify bad faith as a

cause for dismissing a bankruptcy case.  See 11 U.S.C. § 1112(b).  Section 1112(b)(4) provides a

litany of situations under which dismissal may be appropriate, but "[t]he bankruptcy court may

consider reasons not enumerated in § 1112(b) that may justify dismissing a Chapter 11 case for

"cause."" SB Props., 185 B.R. at 203 (citing Monsour Med. Ctr., Inc. v. Stein (In re Monsour

Med. Ctr., Inc.), 154 Bankr. 201, 208 (Bankr. W.D. Pa. 1993)).  The "underlying legislative

history of § 1112(b) confirms that what may constitute "cause" is non-exhaustive."  SB Props.,

185 B.R. at 203 (citing Carolin Corp. v. Miller, 886 F.2d 693, 699 (4th Cir. 1989)).  "Moreover,

the overwhelming majority of courts considering the issue agree that an implicit good faith filing

requirement exists under § 1112(b), and that a Chapter 11 case may be dismissed for cause if it

was filed in bad faith."  SB Props., 185 B.R. at 203 (citing Trident Assocs. Ltd. P'ship v. Metro.

Life Ins. Co. (In re Trident Assocs. Ltd. P'ship), 52 F.3d 127, 130 (6th Cir. 1995); Marsch v.

Marsch (In re Marsch), 36 F.3d 825, 828 (9th Cir. 1994); Carolin Corp., 886 F.2d at 699-700;

Phoenix Piccadilly v. Life Ins. Co. of Va. (In re Phoenix Picadilly), 849 F.2d 1393 (11th Cir.

1988); Little Creek Dev. Co. v. Commw. Mortgage Corp. (In re Little Creek Dev. Co.), 779 F.2d

1068, 1072 (5th Cir. 1986)).

By the decision of the Third Circuit Court of Appeals in the matter of In re SGL Carbon

Corp., 200 F.3d 154 (3d Cir. 1999), a good faith requirement for Chapter 11 bankruptcy filings

was established in this Circuit.  See In re RBGSC Inv. Corp., 253 B.R. 352, 365 (E.D. Pa. 2000).

The Third Circuit Court of Appeals examined 11 U.S.C. § 1112(b) in coming to the conclusion

"that under this statute Chapter 11 bankruptcy petitions "are subject to dismissal…unless filed in

good faith."  RBGSC, 253 B.R. at 266 (citing SGL Carbon, 200 F.3d at 160).  In its Order, the

Bankruptcy Court specifically found that the Debtor had filed its petition in good faith, and its

holding was not clearly erroneous.  MarbleLife has argued that the Bankruptcy Court erred in

denying the Motion because the bankruptcy petition was filed in bad faith as a litigation tactic.

See Brief of the Appellant, p. 11, 14.  Specifically, MarbleLife has alleged that the petition

serves no valid bankruptcy purpose; that an analysis of the factors enumerated under In re DCNC

North Carolina I, LLC, 407 B.R. 651 (Bankr. E.D. Pa. 2009), establish the bad faith of the

Debtor; and that any harm to the Debtor is self-inflicted.  The Debtor will deal with each of these

arguments in turn.

The Bankruptcy Court found no merit in MarbleLife's argument that the petition of the

Debtor serves no valid bankruptcy purpose.  "[G]ood faith necessarily requires some degree of

financial distress on the part of a debtor."  In re Integrated Telecom Express, Inc., 384 F.3d 108,

121 (3d Cir. 2004) (citing SGL Carbon, 200 F.3d at 166).  The Bankruptcy Court concluded that

"[i]n no sense may the Debtor be considered a financially healthy debtor."  Memorandum

Opinion, p. 7.  Specifically referencing the Debtor's inability to continue funding its obligations,

the Bankruptcy Court pointed to the other creditors and parties in interest involved in this

bankruptcy case, including landlords, secured creditors, unsecured creditors, and those with

outstanding executory contracts for the services of the Debtor.  See generally id.  The Debtor has

the opportunity to operate through the bankruptcy process, generate revenues to pay its

outstanding vendors, various creditors, and employees, and by filing for bankruptcy protection,

19

"the Debtor was attempting to preserve its value as a going concern that would in turn maximize the value of the bankruptcy estate." Id.  The Bankruptcy Court specifically found that "[t]his purpose is consistent with a finding that the Debtor has acted in good faith." Id.

In the Brief of the Appellant, MarbleLife appears to assume that the Debtor cannot operate without violating the Preliminary Injunction Orders, and that therefore the petition serves no valid bankruptcy purpose.  See Brief of the Appellant, p. 14.  This argument, consistent with the argument also made by MarbleLife at the hearing on this matter that the Debtor's "inability to reorganize" should be considered evidence of bad faith, puts the proverbial cart before the horse.  Again, MarbleLife is assuming what it needs to prove, *i.e.* whether it is entitled to enforce the Preliminary Injunction Orders.  See Memorandum Opinion, p. 6, n. 6.  By denying the Motion to dismiss the bankruptcy case, and denying the request of MarbleLife for termination of the automatic stay, the Bankruptcy Court clearly delineated that MarbleLife is not authorized to enforce the Preliminary Injunction Orders.

It is clear that the Debtor had a valid purpose in filing the bankruptcy petition, in that the Debtor was in severe financial distress on the Petition Date.  The Debtor was aware of the extremely high litigation costs associated with proceeding with contested litigation involving the Arbitration and that it would be unable to make payments on account of such costs and expenses without operating revenues.  MarbleLife was pressing a motion in the District Court Litigation to hold the Debtor accountable for more than $400,000 of attorney fees that had supposedly been incurred in the obtainment of the Preliminary Injunction Orders.

Furthermore, there are far more interested parties in this bankruptcy proceeding than just MarbleLife, including a landlord, a creditor on a loan facility, secured creditor on a vehicle loan, trade vendors, employees, and customers on commercial floor maintenance contracts, who would

all be adversely affected by MarbleLife's inability to operate or generate revenues.  In fact, the

Schedules filed by the Debtor note secured claims totaling over $25,000 and unsecured claims in

an amount exceeding $170,000.  The bankruptcy filed by the Debtor clearly serves a valid

bankruptcy purpose by maximizing the value of the bankruptcy estate, instead of allowing

MarbleLife to singlehandedly attempt to disassemble the business to the detriment of a

significant number of other interested parties.  The Order denying the Motion of MarbleLife to

dismiss the Debtor's bankruptcy case must be affirmed, because the findings of good faith and a

legitimate reorganization purpose are not clearly erroneous.

In support of its argument that the Debtor did not file the voluntary petition in good faith,

MarbleLife cites the factors enunciated in the <u>DCNC</u> matter, which case is not controlling on this

Honorable Court, nor was it controlling on the Bankruptcy Court.  MarbleLife also did not cite to

the <u>DCNC</u> factors in the Motion or explicitly argue the factors in the case as a basis for

dismissing the voluntary petition, and therefore the Memorandum Opinion does not extrapolate

as to its application.  This is, of course, contrary to the implication made by MarbleLife in the

Brief of the Appellant that "[t]he bankruptcy court did not consider or even mention these

factors."  Brief of the Appellant, p. 17.  The Debtor therefore requests that this Honorable Court

dismiss this argument presented by MarbleLife in the Brief of the Appellant in its entirety.

Should this Honorable Court find some applicability of the <u>DCNC</u> case to the facts on

appeal or decide to entertain this argument, then the Debtor urges this Honorable Court to find

that the Debtor filed its voluntary petition in good faith.  Contrary to the assertions of

MarbleLife, the <u>DCNC</u> case does not recommend that a review of a bankruptcy case be limited

to any particular list of factors.  Instead, the <u>DCNC</u> court confirmed that a "court's determination

of the good faith issue is a fact intensive inquiry based on the totality of the circumstances."

DCNC, 407 B.R. at 662 (citing Integrated Telecom, 384 F.3d at 118).  In citing the list of factors

originally propounded by the SB Props. court, the DCNC court further cautioned that "courts

should guard against any impulse to overemphasize any one factor, to engage in mere "indicia-

counting," or to "force particular facts into previously identified patterns."…[T]he totality of

factors must be viewed, that no one factor can ever be deemed dispositive, and that any

conceivable list of factors cannot be exhaustive."  Id. (quoting Carolin, 886 F.2d at 701).

        In fact, the DCNC court found at least four of the "bad faith" factors to be present in that

case, yet still felt "satisfied that the Debtors have met their burden of establishing, by a

preponderance of the evidence, that their bankruptcy petitions initially were filed in good faith."

DCNC, 407 B.R. at 662.  Several of the factors listed in the Brief of the Appellant are not the

factors cited by the DCNC court, have little or no relevance to the matter before this Court, and

further assume that MarbleLife can win its argument, including that "the Debtor has no ability to

reorganize because it can only do so by violating the [Preliminary Injunction Orders]," "the

evidence demonstrates that MarbleLife offered employment to all of the Debtor's employees,"

and "the petition was filed as a result of a two-party dispute between the Debtor and

MarbleLife."  Brief of the Appellant, p. 18.  Furthermore, the Brief of the Appellant grossly

misconstrues the testimony of Mr. Smith to conveniently support its arguments, and the assertion

that "the existence of these creditors is entirely due to the Debtor's conduct," is simply absurd.

At the very least, the loan facility, secured obligations, debt owed to the AAA, and certain trade

vendor debt would have existed whether or not the Debtor complied with the Preliminary

Injunction Orders, and any assertion to the contrary is completely without merit and a gross

mischaracterization of the truth.  The totality of the circumstances supports the conclusion of the

Bankruptcy Court that the Debtor filed its voluntary petition in good faith, and the Order must be affirmed.

Lastly, MarbleLife cites no direct authority in support of its argument that, even if the harm to the Debtor was self-inflicted, this should be taken into account in considering the good faith of the Debtor in filing a voluntary petition in an attempt to reorganize and maximize the value of the bankruptcy estate.  The argument that the harm to the Debtor was self-inflicted, of course, is not only incorrect, but was not presented for the consideration of the Bankruptcy Court below, and therefore should not be considered by this Honorable Court now.  In fact, the Debtor was the one who initiated the proceedings against MarbleLife in an attempt to have the Franchise Agreement voided due to the inappropriate and untruthful conduct of MarbleLife in its dealings with the Debtor, and any harm from the resulting excessively litigious defensive actions of MarbleLife was not self-inflicted.  Furthermore, the argument consistently pressed by MarbleLife throughout the Brief of the Appellant that "for the Debtor to operate in direct competition with MarbleLife, it must violate the [Preliminary Injunction Orders]" is simply incorrect and ignores the valid and enforceable Order of the Bankruptcy Court staying the District Court Litigation and the effect of the Preliminary Injunction Orders.  Brief of the Appellant, p. 19.  "The decision whether to dismiss a bankruptcy case for lack of good faith is committed to the sound discretion of the bankruptcy court," and the Order entered by the Bankruptcy Court in this matter denying the dismissal of the Debtor's petition should be affirmed in its entirety because the conclusion that the Debtor's bankruptcy was filed in good faith was not clearly erroneous.  See DCNC, 407 B.R. at 661 (citing In re Primestone Inv. Partners L.P., 272 B.R. 554, 555 (D. Del. 2002); In re Forest Hill Funeral Home & Mem'l Park, 364 B.R. 808, 821 (Bankr. E.D. Okla. 2007)).

**B.      The Bankruptcy Court Did Not Err In Denying the Motion of MarbleLife to Terminate the Automatic Stay Pursuant to 11 U.S.C. § 362(d), and the Order Should be Affirmed**

Section 362 of the Bankruptcy Code provides that a filed voluntary petition pursuant to Chapter 11 operates as a stay, applicable to all entities of "the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title," among other things.  11 U.S.C. § 362(a)(1). This provision, commonly known as the "automatic stay," "is one of the fundamental debtor protections provided by the bankruptcy laws.  It gives the debtor a breathing spell from his creditors.  It stops all collection efforts, all harassment, and all foreclosure actions.  It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy."  In re Bruce, 2000 Bankr. LEXIS 746, *5 (Bankr. E.D. Pa. July 10, 2000) (citing H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 340 (1977)). Furthermore, the purpose of the automatic stay has been said "to prevent creditors from gaining a preference for their claims against the debtor; to forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it; and, in general, to avoid interference with the orderly liquidation or rehabilitation of the debtor."  Izzarelli v. Rexene Prods. Co. (In re Rexene Prods. Co.), 141 B.R. 574, 577 (Bankr. D.Del. 1991) (citing Borman v. Raymark Indus., Inc., 946 F.2d 1031, 1036 (3d Cir. 1991) (quoting St. Croix Condo. Owners v. St. Croix Hotel, 682 F.2d 446, 448 (3d Cir. 1982))).

According to the Bankruptcy Code, there are limited circumstances upon which relief from the automatic stay can be granted.  Section 362(d)(1) of the Bankruptcy Code, cited by MarbleLife in the Motion as the statutory basis for granting relief in this instance, provides that

"[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay for cause, including the lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. § 362(d)(1). The verdict of whether to "modify, condition or annul the bankruptcy stay under section 362(d) is committed to bankruptcy court discretion and is to be determined by examining the totality of the circumstances." In re Brown, 311 B.R. 409, 412 (E.D. Pa. 2004).

The burden of proof to be granted relief from the automatic stay is "shifting." Brown, 311 B.R. at 412. "[A] creditor is entitled to relief from the automatic stay if he can make an initial showing of sufficient "cause"" and, "[o]nce the movant establishes "cause," the burden of proof shifts to the debtor." Id. "If the movant however fails to make an initial showing of cause, courts have denied relief without requiring any showing from the debtor that it is entitled to continued protection." In re Edler, 416 B.R. 147, 150 (Bankr. E.D. Pa. 2009) (citing In re Telegroup, Inc., 237 B.R. 87, 91, n.3 (Bankr. D. N.J. 1999)). The term "cause" is an "intentionally broad and flexible concept which must be determined on a case-by-case basis." Brown, 311 B.R. at 412 (citing In re Merchant, 256 B.R. 572, 576 (Bankr. W.D. Pa. 2000)). Indeed, there are a "multitude of reported decisions discussing relief from the stay for "cause," all of which are fact intensive and generally offer no precise standards to determine when "cause" exists to successfully obtain relief from the stay." Id. at 412-13.

Bankruptcy Courts in the Eastern District of Pennsylvania have refused to adopt a standardized test when assessing relief from the automatic stay, and instead have opted to "balance the harms" between the parties and make decisions regarding requests for relief from the automatic stay on a case-by-case basis. See In re Glunk, 342 B.R. 717, 737 (Bankr. E.D. Pa.

2006) ("Courts have allowed modification of the Section 362 stay…where no great prejudice to either the estate or the debtor would result and where the hardship to the plaintiff caused by the continuance of the stay outweighs the hardship to the debtor caused by stay modification"); In re Bobridge, 81 B.R. 332 (Bankr. E.D. Pa. 1988) ("Each request for "cause" under § 362(d)(1) must be considered on its own facts").  "[W]hile it may not be absolutely necessary to be a secured party in order to establish "cause" under § 362(d), that status is frequently, as a practical matter, a precondition for such relief."  In re Stranahan Gear Co., Inc., 67 B.R. 834, 837 (Bankr. E.D. Pa. 1986) (citing First Nat'l Bank of Denver v. Turley, 705 F.2d 1024, 1027 (8th Cir. 1983); In re Schmid, 53 B.R. 70, 71 (Bankr. E.D. Pa. 1985)).  Courts have typically "granted relief from the automatic stay to unsecured creditors under the "cause" prong of § 362(d) to allow matters which were on the verge of trial when bankruptcy was filed to proceed when no great prejudice to the bankruptcy estate would result."  Bruce, 2000 Bankr. LEXIS at *9 (citing Holtkamp v. Littlefield (In re Holtkamp), 669 F.2d 505, 507-509 (7th Cir. 1982); Brodsky v. Philadelphia Athletic Club, Inc. (In re Philadelphia Athletic Club, Inc.), 9 B.R. 280 (Bankr. E.D. Pa. 1981)).

In its Motion, MarbleLife specifically sought relief from the automatic stay for cause to generally enforce "the terms of the preliminary injunction" and "to permit MarbleLife to pursue all rights and remedies against the Debtor for its failure to comply with the terms of the preliminary injunction."  A.R., Doc. 4, ¶ 38.  Nowhere in the Motion did MarbleLife indicate that it was seeking any sort of bifurcation of the Preliminary Injunction Orders, separating its request for relief from the automatic stay from the property turnover provisions versus the cease and desist provisions.  See generally id.  Instead, MarbleLife sought an overriding general termination of the automatic stay for "cause," including the alleged bad faith filing of the Debtor and an alleged lack of adequate protection.  See id. at p. 15-16.  MarbleLife did not raise any

bifurcation issue regarding the Preliminary Injunction Orders until the hearing on the Motion, which will be discussed further below.

As the Bankruptcy Court properly noted, MarbleLife's request for termination of the automatic stay on the grounds of bad faith should be denied, because it is simply a recitation of the argument it makes for the dismissal of the bankruptcy proceeding for "cause" pursuant to 11 U.S.C. § 1112(b). Furthermore, the Bankruptcy Court's determination that the voluntary petition was filed in good faith is not clearly erroneous. Memorandum Opinion, p. 8. The Debtor shall therefore rely on the arguments previously set forth in support of the good faith filing of the voluntary petition. The Debtor respectfully declines to rehash arguments that have already been made in the Brief of the Appellee for the sake of brevity.

Besides suggesting that MarbleLife should be granted relief from the automatic stay for "cause" due to the alleged bad faith of the Debtor, MarbleLife has further suggested that its alleged interests in the property of the Debtor are not adequately protected. Brief of the Appellant, p. 29. "[A]s part of the *prima facie* case, [a] movant must demonstrate a factual and legal right to the relief that it seeks." In re Elmira Litho, Inc., 174 B.R. 892, 902 (Bankr. S.D.N.Y. 1994) (citing In re Planned Sys., Inc., 78 Bankr. 852, 859 (Bankr. S.D. Ohio 1987)). "Thus, every party seeking relief from the automatic stay under § 362(d)(1) must carry the initial burden of showing that it is entitled to relief before the debtor is obligated to go forward with its proof." Id. (citing Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.), 907 F.2d 1280, 1285 (2d Cir. 1990); In re Keene Corp., 171 Bankr. 180, 182 (Bankr. S.D.N.Y. 1994)). "The determination of adequate protection is within the bankruptcy court's discretion and it requires a "careful balancing" of the relevant factors, including the "value of the collateral, the likelihood it will depreciate over time, the debtor's prospects for a successful reorganization

and the debtor's performance under the plan.'''" <u>Rocco v. J.P. Morgan Chase Bank</u>, 2006 U.S.

Dist. LEXIS 12850, *10 (W.D. Pa. Mar. 24, 2006) (quoting <u>In re Olick</u>, 221 B.R. 146, 161

(Bankr. E.D. Pa. 1998)).

The Bankruptcy Court specifically found that MarbleLife "made no showing establishing

its interest or that the value of its interest is declining."  Memorandum Opinion, p. 9.  Instead of

presenting any witnesses who could provide testimonial evidence as to the interest of MarbleLife

in property of the Debtor, MarbleLife chose to rely on the Preliminary Injunction Orders issued

in the District Court Litigation.  <u>See</u> <u>generally</u> <u>id</u>.  The effect of the Preliminary Injunction

Orders, of course, were not only stayed by the filing of the voluntary petition, they "did not make

a final enforceable ruling with regard to the parties [sic] rights or obligations under the

[Franchise Agreement]," which would include property rights.  A.R., Doc. 41, p. 2, n. 1.

Although MarbleLife complains that it should not be required to make a showing to the

Bankruptcy Court of an interest in the Debtor's property, MarbleLife cites no relevant authority

that would allow the Bankruptcy Court to simply accept and incorporate the findings of the

District Court as its own, when the elements for identifying an interest in property and

irreparable harm are not identical.  <u>See</u> Memorandum Opinion, p. 10.

Furthermore, though the Bankruptcy Code does not define the phrase "interest in

property," the Debtor seriously disputes that MarbleLife has an interest in the Debtor's property.

<u>See</u> <u>e.g.</u> <u>Folger Adam Security, Inc. v. DeMatteis/MacGregor JV</u>, 209 F.3d 252, 257 (3d Cir.

2000).  The Debtor listed MarbleLife as holding an unliquidated, disputed general unsecured

claim on its Schedule F.  <u>See</u> A.R., Doc. 14.  Even assuming that the claim is valid, "[c]reditors

who hold only an unsecured claim against the debtor do not, by virtue of such a claim, hold an

interest in property entitled to adequate protection."  <u>In re 3036 Richmond, Inc.,</u> 2001 Bankr.

LEXIS 303, *23 (Bankr. E.D. Pa. Mar. 13, 2001) (citing In re Babcock & Wilcox, 200 U.S. Dist.

LEXIS 6448, *4 (E.D. La. 2000); In re Garland Corp., 6 B.R. 456, 462 (1st Cir. BAP 1980); In re

Munsey Corp., 10 B.R. 864, 865-66 (Bankr. E.D. Pa. 1981)).  As one commentator has

explained:

> Unsecured creditors have no property interests to protect so that relief from the
> stay under [Section 362](d)(2) is never possible.  Their other concerns are usually
> unimportant against the stay because the bankruptcy will discharge the debts
> owed to them.  Essentially, these creditors' reasons for wanting relief from the
> stay contradict the fundamental purposes of the bankruptcy.  Typically, therefore,
> they lack "cause" for relief under [Section 362](d)(1).

Epstein, et al., Bankruptcy, § 3-25 at 267 (1992).

The Bankruptcy Court was therefore correct in its conclusion that MarbleLife failed to

meet its initial burden with regard to relief from the stay under 11 U.S.C. § 362(d)(1).  Because

MarbleLife does not hold a secured claim in this bankruptcy case, it has no property interest to

protect.  MarbleLife therefore failed to carry its initial burden with regard to establishing an

interest in property and, even if MarbleLife had been able to establish its interest in property of

the Debtor, MarbleLife failed to present any evidence whatsoever to the Bankruptcy Court which

would establish that the value of its interest is declining.  The Order must be affirmed.

Lastly, MarbleLife contends that the Bankruptcy Court erred when it found that "cause"

did not exist to grant relief from the automatic stay under 11 U.S.C. § 362 utilizing the three-

factor test set forth in the matter of In re All Am. Props., Inc., 2010 Bankr. LEXIS 1286 (Bankr.

M.D. Pa. Apr. 15, 2010).  In doing so, MarbleLife alleges that the Bankruptcy Court "ignored

and overruled the District Court findings of fact" and the Preliminary Injunction Orders.  Brief of

the Appellant, p. 32.  This, of course, is not factually or legally correct, because the Bankruptcy

Court merely confirmed that the automatic stay provided for by the Bankruptcy Code operates to

prevent MarbleLife from enforcing the Preliminary Injunction Orders.  See generally

Memorandum Opinion, p. 14.  The Bankruptcy Court correctly concluded that cause did not

exist to grant MarbleLife relief from the automatic stay to continue its litigation in another

forum, and the Order must be affirmed.

The Bankruptcy Court correctly noted that "[s]everal courts in this circuit have relied

upon a three-pronged test to determine whether cause exists for granting relief from the

automatic stay to continue litigation in another forum." All Am. Props., 2010 Bankr. LEXIS at

*7 (citing In re Tribune Co., 418 B.R. 116, 126 (Bankr. D. Del. 2009)); Memorandum Opinion,

p. 12.  This three-pronged test requires a court to consider: "(1) Whether any great prejudice to

*either the bankrupt estate or the debtor* will result from continuation of the civil suit; (2)

[w]hether the hardship to the non-bankrupt party by maintenance of the stay *considerably*

*outweighs* the hardship to the debtor, and (3) [w]hether the creditor has a probability of

prevailing on the merits." Tribune, 418 B.R. at 126 (emphasis added).  The Bankruptcy Court

correctly concluded that both the Debtor *and* the estate will be greatly prejudiced by the

continuation of the District Court Litigation.  See Memorandum Opinion, p. 12-13.  Not only

will the Debtor's customers and employees be prejudiced by the continuation of the District

Court Litigation, the Debtor will simultaneously be unable to operate and forced to incur

substantial arbitration costs, which will "deplete the Debtor's estate of any residual assets."  Id.

at 13.

With regard to the balance of hardships, the Bankruptcy Court correctly noted that in the

District Court Litigation, relief did not require a balancing of hardships between MarbleLife and

the Debtor and its estate.  Memorandum Opinion, p. 13.  Furthermore, the standard for relief in a

bankruptcy proceeding, whether the hardship to MarbleLife *considerably outweighs* the hardship

to the Debtor, is different than the standard for a preliminary injunction, which is only "intended

to ensure that the issuance of an injunction would not harm the trade dress infringer more than a denial would harm the party seeking an injunction." A.R., Doc. 36, p. 36; see also Tribune, 418 B.R. at 126, *contra* Opticians Ass'n of Am. v. Independent Opticians of Am., 920 F.2d 187, 197 (3d Cir. 1990). Therefore, the analysis contained in the Preliminary Injunction Orders was not determinative of the balance of harms test required in a bankruptcy case, and the Bankruptcy Court was required to make an independent determination. Id. Again, citing the considerable harm the Debtor and its estate would suffer, the testimonial evidence presented by the Debtor concerning any harm MarbleLife would suffer, and the lack of evidence actually produced by MarbleLife, the Bankruptcy Court correctly concluded that "the second factor also weighs in favor of denying [MarbleLife] relief." Memorandum Opinion, p. 13-14.

Lastly, the Bankruptcy Court determined that MarbleLife was likely to prevail on the merits of its claim. Because "[e]ven a slight probability of success on the merits may be sufficient to support lifting an automatic stay in an appropriate case," a requirement which is no more stringent than that employed by a court considering a preliminary injunction, the Debtor does not dispute the Bankruptcy Court adopting the analysis used in the District Court Litigation. Am. Airlines, Inc. v. Continental Airlines, Inc. (In re Continental Airlines, Inc.), 152 B.R. 420, 426 (D. Del. 1993) (citations omitted). The Debtor does, however, strongly dispute that MarbleLife is likely to prevail on the merits of its claim, a position that was reiterated in the Motion for Reconsideration, but a finding in favor of MarbleLife on this element alone does not dictate a finding of relief from the stay in favor of MarbleLife. See generally A.R., Doc. 37. Because the Bankruptcy Court found that great prejudice to both the bankrupt estate and the Debtor would result from continuation of the District Court Litigation, and that any hardship to MarbleLife did not considerably outweigh the hardship to the Debtor. The conclusions of the

Bankruptcy Court in its Order were wholly supported given the breadth of evidence provided on

behalf of the Debtor, and considering the lack of evidence provided by MarbleLife.  The Order

must be affirmed by this Honorable Court.

**C.      The Bankruptcy Court Did Not Issue an Advisory Opinion or Decide
An Issue that Was Not Before It, and the Order Should be Affirmed**

MarbleLife argues that the Bankruptcy Court erred when it determined that the

Preliminary Injunction Orders in their entirety were subject to the automatic stay provided for

under 11 U.S.C. § 362.  Brief of the Appellant, p. 20.  Specifically, the Bankruptcy Court held

that by filing a voluntary petition, "the Debtor stayed the continuation of the District Court

Litigation as well as the enforcement" of the Preliminary Injunction Orders.  Memorandum

Opinion, p. 8.  Nowhere in the Memorandum Opinion does the Bankruptcy Court make a

holding as sweeping as that suggested by MarbleLife, "that all judicial proceedings and all court

orders are stayed merely because the Debtor files for Chapter 11 relief."  Brief of the Appellant,

p. 20.  This clearly misconstrues the holding of the Bankruptcy Court with respect to the scope of

the automatic stay.

In the Brief of the Appellant, MarbleLife argues that the automatic stay only pertains to

the enforcement of "claims," and that it does not prevent the enforcement of equitable remedies

for which monetary damages do not present a viable alternative.  Brief of the Appellant, p. 21.

This was an argument that MarbleLife failed to make to the Bankruptcy Court in its written

Motion.  See generally A.R., Doc. 4.  In the Memorandum Opinion, the Bankruptcy Court

specifically took note that in its Motion, MarbleLife "did not raise the issue of whether its

interest in the enforcement of the covenant not to compete constitutes a claim pursuant to 11

U.S.C. § 101(5)."  Memorandum Opinion, p. 8.  The Bankruptcy Court further noted that

"[b]ecause [MarbleLife] did not raise this issue as a ground for relief pursuant to either § 1112(b)

or § 362(d)," the Court would refrain "from determining whether money damages are a viable alternative to the equitable enforcement" of MarbleLife's interest.  Id. at 8.

Although the Bankruptcy Court did refrain from ruling on this specific point, and instead chose to apply the test relied upon in All Am. Props., *supra*, to determine whether stay relief was warranted to enforce the Preliminary Injunction Orders, the Debtor disagrees with the position adopted by MarbleLife in the Brief of the Appellant.  The Debtor respectfully represents that any legal rights MarbleLife may have under the Noncompetition Covenant are in fact bankruptcy "claims" under 11 U.S.C. § 101(5) subject to the exclusive jurisdiction of the Bankruptcy Court, and therefore subject to the automatic stay.  "[A] discharge in bankruptcy discharges the debtor from all debts that arose before bankruptcy."  Ohio v. Kovacs, 469 U.S. 274, 278 (1984); see also 11 U.S.C. § 1141(d)(1)(A).  "For bankruptcy purposes, a debt is a liability on a claim."  Id. (citing 11 U.S.C. § 101(11)).  A claim in a bankruptcy proceeding is a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or *right to an equitable remedy for breach of performance if such breach gives rise to a right to payment*, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured."  11 U.S.C. § 101(5) (emphasis added).  "[A] right to payment under the [B]ankruptcy [C]ode is, essentially, an obligation to pay money."  Air Line Pilots Ass'n v. Continental Airlines, 125 F.3d 120, 133 (3d Cir. 1997).

"The term "claim" as defined in the [B]ankruptcy [C]ode is construed broadly to permit debtors to meet all of their legal obligations in bankruptcy and to enable holders of claims to participate in the bankruptcy proceedings."  Continental Airlines, 125 F.3d at 132.  A creditor's

claim in a bankruptcy proceeding is integral to the restructuring of the debtor-creditor relationship through the bankruptcy court's equity jurisdiction.  See Langenkamp v. Culp, 498 U.S. 42, 44 (1990).  The Third Circuit Court of Appeals has explicitly "stated that an equitable remedy will "give rise to a payment," and therefore be deemed a "claim," when the payment of monetary damages is an alternative to the equitable remedy."  In re Ben Franklin Hotel Assocs., 186 F.3d 301, 305 (3d Cir. 1999) (citing Continental Airlines, 125 F.3d at 133 (citation omitted)).  Thus, "where an award of money damages [is] a "viable alternative" to the equitable remedy sought…[such as] specific performance…[the Third Circuit has] held that the asserted equitable relief should be treated as a "claim.""  Ben Franklin, 186 F.3d at 305 (citing Continental Airlines, 125 F.3d at 120; In re Torwico Elecs., 8 F.3d 146 (3d Cir. 1993)).  Under the terms of 11 U.S.C. § 101(5), any right which can be reduced to monetary damages is therefore a "claim," even if that right could also be enforced by means of an equitable remedy.

If valid, the legal rights of MarbleLife against the Debtor under the Noncompetition Covenant and the Preliminary Injunction Orders can all be reduced to monetary damages and all therefore constitute a "claim" under 11 U.S.C. § 101(5).  By filing a counterclaim in the Arbitration, MarbleLife made clear that it believes it is entitled to extensive monetary damages from the Debtor under the Noncompetition Covenant.  The counterclaim filed in the Arbitration included causes of action for breach of contract, federal trademark infringement, federal false designation of origin, federal dilution of trademark, Texas common law trademark infringement, Texas common law unfair competition, tortuous interference with contract, unjust enrichment, misappropriation of trade secrets, and conversion.  For these causes of action, MarbleLife sought monetary damages from the Debtor in an amount between $500,000 and $1,000,000.  MarbleLife evidently believed that it had a "right to payment" under the Noncompetition

Covenant and Franchise Agreement for those causes of action, which clearly constitute a "claim" under 11 U.S.C. § 101(5).

Furthermore, "[t]he case law clearly supports the…contention that, if a nondebtor's right under a noncompete agreement give rise to a claim, then the nondebtor is not entitled to specific performance of the agreement." In re Kilpatrick, 160 B.R. 560, 564 (Bankr. E.D. Mich. 1993) (citations omitted).  The primary issue for consideration, therefore, is whether MarbleLife's "right to enforce the covenant is tantamount to a claim." Id.  If the Debtor's alleged breach of the Noncompetition Covenant gave MarbleLife a "right to payment," then MarbleLife holds a claim. See id.  "It is well established that the existence of a claim in bankruptcy is generally determined by state law." Id.

The parties agreed that Texas law would control interpretation of the rights of the parties under the Franchise Agreement. See A.R., Doc. 28, § 9.9.  Under Texas law, monetary damages may be awarded as compensation for violation of a valid noncompete agreement. See Tex. Bus. Com. Code § 15.51(a) ("a court may award the promisee under a covenant not to compete damages, injunctive relief, or both damages and injunctive relief for a breach by the promisor of the covenant").  Pursuant to the terms of the Franchise Agreement, a breach of the Noncompetition Covenant is subject to a cause of action for damages or injunctive relief or both. See A.R., Doc. 28, § 9.3.  Notably, the relevant issue for the consideration of this matter is "not the form of relief [MarbleLife] most hoped to achieve…but whether damages are an alternative to [the] proposed equitable remedy." Ben Franklin, 186 F.3d at 306.

Monetary damages were specifically sought by MarbleLife against the Debtor in the Arbitration proceeding in an amount totaling between $500,000 and $1,000,000.  Because monetary damages for any alleged breach of the Noncompetition Covenant are a viable

alternative remedy, any legal right MarbleLife may have to enforce the Noncompetition Covenant against the Debtor is tantamount to a claim under 11 U.S.C. § 101(5).  Furthermore, because any legal rights MarbleLife may have against the Debtor for enforcement of the Noncompetition Covenant constitute a "claim," MarbleLife "cannot obtain specific performance of either the covenant or the injunction, but must instead accept the same treatment of its claim as any other unsecured creditor" in the bankruptcy proceeding.  Kilpatrick, 160 B.R. at 563-64.  Therefore, any rights MarbleLife may have to enforce the Noncompetition Covenant against the Debtor constitute a "claim" which is subject to the application of the automatic stay provided for in 11 U.S.C. § 362.

In support of its argument that the Preliminary Injunction Orders are not subject to the automatic stay of 11 U.S.C. § 362, MarbleLife attempts to argue that it "sought relief from the automatic stay to enforce **only** those portions of the preliminary injunction that **did not** deal with equitable cease and desist relief."  Brief of the Appellant, p. 23 (emphasis in original).  This is patently false.  In the Motion, MarbleLife argued that "the only adequate protection the Debtor can provide to MarbleLife during the pendency of this bankruptcy proceeding is compliance with all of the terms of the preliminary injunction."  A.R., Doc. 4, p. 15.  Later in the Motion, MarbleLife again argued that it "must be permitted to protect itself by enforcing the terms of the preliminary injunction."  Id. at 16.  Nowhere in the Motion did MarbleLife note any sort of "bifurcation" of the Preliminary Injunction Orders.  MarbleLife only raised the possibility of a potential bifurcation of the issues at the hearing on the Motion.

MarbleLife argues that the Bankruptcy Court issued an advisory opinion on the application of the automatic stay to the entirety of the Preliminary Injunction Orders.  In reality, at the hearing on the Motion, counsel for MarbleLife put this issue squarely before the

Bankruptcy Court for its consideration, and the Bankruptcy Court was well within its rights to make a ruling.  On several separate occasions, counsel for MarbleLife argued that it did not believe the automatic stay applied certain portions of the Preliminary Injunction Orders.  See Brief of the Appellant, p. 23-24.  The Bankruptcy Court clearly noted this issue and advised counsel for MarbleLife that it would entertain the argument.  See Brief of the Appellant, p. 24. Counsel for MarbleLife somehow seems surprised that the Bankruptcy Court would then rule on an issue that MarbleLife purposefully placed before it, referring to the ruling as "overbroad" and an "unauthorized advisory opinion."  Brief of the Appellant, p. 25.  This position is plainly unsustainable.  MarbleLife placed the issue of the application of the automatic stay to the entirety of the Preliminary Injunction Orders directly before the Bankruptcy Court, if not in the Motion, at the very latest during the hearing on the Motion when counsel professed its belief to the Bankruptcy Court that it did not believe certain portions of the Preliminary Injunction Orders could be stayed.  See generally Brief of the Appellant, p. 24.

Lastly, the Debtor finds it worthy to note that, in support of its argument that the Bankruptcy Court issued an unauthorized advisory opinion, MarbleLife appears to simply assume that certain portions of the Preliminary Injunction Orders cannot be stayed by the filing of a bankruptcy as a matter of law.  See e.g. Brief of the Appellant, p. 23.  Furthermore, MarbleLife appears to assume that it did not need to apply to the Bankruptcy Court for clarification of the scope of the automatic stay as it relates to the enforcement of any provision of a preliminary injunction order, despite the lack of any directive on point in the Bankruptcy Code, existing and applicable Federal Rules of Bankruptcy Procedure, or controlling and definitive case law in this Circuit on the issue.  See Brief of the Appellant, p. 25 ("MarbleLife specifically determined that no stay relief was needed because no stay was applicable.").  Needless to say,

the Debtor wholeheartedly disagrees with this course of action, and again reaffirms its position that MarbleLife did in fact explicitly present this issue for the consideration of the Bankruptcy Court at the hearing.

In sum, the Bankruptcy Court was well within its rights to determine that, "[b]y filing its petition, the Debtor stayed the continuation of the District Court Litigation as well as the enforcement" of the Preliminary Injunction Orders.  Memorandum Opinion, p. 8.  It is contradictory for MarbleLife to argue that the Bankruptcy Court issued an improper advisory opinion, when MarbleLife argued for termination of the automatic stay in the Motion and placed the issue of the application of the automatic stay to all portions of the Preliminary Injunction Orders squarely before the Court at the hearing for its consideration.  The Order should be affirmed in its entirety.

## V.     CONCLUSION

For the foregoing reasons, the Debtor respectfully requests that this Honorable Court (1) affirm the Bankruptcy Court's Order denying the Motion of MarbleLife seeking an order (a) dismissing the bankruptcy case or, (b) in the alternative, terminating the automatic stay; and (2) tax all costs of this appeal against MarbleLife pursuant to Federal Rule of Bankruptcy Procedure 8014.

Respectfully submitted:

**PAUL J. WINTERHALTER, P.C.**

By:     */s/Corinne M. Samler*
PAUL J. WINTERHALTER
CORINNE M. SAMLER
1717 Arch Street, Suite 4110
Philadelphia, PA 19103
Telephone: (215) 564-5050
Facsimile: (215) 564-5597
Email: csamler@pjw-law.com

*Attorneys for Appellee Stone Resources, Inc.*

Dated: May 11, 2011