# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE:                                   :
                                     :
                                     :
STONE RESOURCES, INC.,                   :
                                     :   CIVIL ACTION NO. 11-2526
Debtor                                   :
                                     :

## MEMORANDUM OPINION

**Tucker, J.**                                    **September ___, 2011**

Presently before the Court is Appellant, MarbleLife Inc.'s Appeal of the Bankruptcy

Decision rendered by Honorable Magdeline D. Coleman of the United States Bankruptcy Court for

the Eastern District of Pennsylvania in <u>In re Stone Resources, Inc.</u>, Bankr. No. 11-11124 (MDC)

(Doc.3 ) and Appellee, Stone Resources Inc.'s Response in Opposition thereto (Doc. 5).  After

careful consideration of the parties' submissions and exhibits thereto and after oral argument held

before the Court on June 21, 2011, the Court will reverse the Bankruptcy Decision rendered by

Honorable Magdeline D. Coleman of the United States Bankruptcy Court for the Eastern District of

Pennsylvania in <u>In re Stone Resources, Inc.</u>,Bankr. No. 11-11124 (MDC) in part.

Appellant, MarbleLife Inc. ("Appellant" or "MarbleLife")  appeals from an order of the

Bankruptcy Court denying Appellant's motion to dismiss pursuant to 28 U.S.C. § 1112(b) and

denying Appellant's motion for relief from the automatic stay provision of the bankruptcy code

pursuant to 28 U.S.C. § 362(d)(1).  The issue on appeal is whether, on the facts of this case, a

preliminary injunction entered prior to the filing of a petition for bankruptcy is a claim within the

meaning of the bankruptcy code and thus subject to the provisions of the automatic stay, and whether

the Bankruptcy Court issued an advisory opinion or decided an issue that was not properly before it.

The Court concludes that the preliminary injunction is not subject to the automatic stay and will therefore reverse the Bankruptcy Decision to the extent that it denied Appellant's motion for relief from the automatic stay.

**II.**                          **FACTUAL BACKGROUND**

The facts relevant to the instant motion are as follows.

A.      MarbleLife Action

The instant action stems from MarbleLife v. Stone Resources, Inc., Civ. No. 10-2480, (hereinafter the "MarbleLife Action") a civil action which has been pending before this Court since May 21, 2010.  Appellant initiated the MarbleLife Action against Appellee, Stone Resources Inc. "Appellee" "Stone Resources") in the United States District Court for the Eastern District of Pennsylvania with the filing of a Complaint for injunctive relief pursuant to Federal Rule of Civil Procedure 65.[1]  The MarbleLife Action concerned allegations of breach of contract, trademark infringement, false designation of origin, and trademark dilution.  The underlying dispute between the parties concerns the termination of a Franchise Agreement entered into by the parties on April 3, 2000.   Appellant, a Texas corporation with its principal place of business in Sanford, Florida, is engaged in the business of restoring and repairing granite and other types of inorganic and organic surfaces.  Appellant sells franchises of its business system under which it grants to franchisees across the United States the rights to use its methods, trademarks, and related services and products. Appellee, a former franchisee of Appellant is a Pennsylvania corporation with its principal place of

---

[1] The parties agreed by contract to resolve all disputes relating to the enforcement and interpretation of the Franchise Agreement via arbitration before a panel of members of the American Arbitration Association. At the time of the filing of the MarbleLife Action, an arbitration proceeding was pending in Dallas, Texas. Said arbitration proceeding was commenced by Appellee on April 9, 2010 and alleged the following causes of action: negligent misrepresentation, breach of contract, fraud and violation of the Texas Deceptive Trade Practices.

business in Media, Pennsylvania.  The Franchise Agreement entered into by the parties granted

Appellee certain rights including, _inter alia_, the right and license to operate a franchise in a specified

territory.   Additionally, Appellee was granted the right and license to use MarbleLife's registered

trademark.  Pursuant to the Franchise Agreement, Appellant adopted the trade name, "MarbleLife of

Delaware Valley."  In exchange for the rights granted to Stone Resources under the Franchise

Agreement, Appellee agreed to pay Appellant royalties from its gross income, franchise fees and

advertising assessments which accrued during the term of the Franchise Agreement.

The Franchise Agreement had an initial term of ten (10) years (which was not extended), and

imposed certain requirements upon Appellee following its expiration, including the following: (1) an

agreement not to compete during the term of the Franchise Agreement and for a period of two years

following expiration of the Franchise Agreement; (2) a requirement to cease using the trademark

and/or any System Rights; and (3) a limitation on the use of Appellant's confidential information

only for the purposes of fulfilling Franchisee's obligations under this Agreement.

In the event of termination, the Franchise Agreement also included additional consequences

of expiration, including the following: (1) the immediate termination of all rights granted to

Appellee; (2) the transfer of business, customers, facilities, services, employees, and telephone

numbers to Appellant; and (3) the return or disposal of certain specified information (i.e., all

advertising and promotional materials containing the MarbleLife trademark; all information relating

to MarbleLife; all manuals and supplements; and all sales or marketing data relating to MarbleLife).

In entering into the Franchise Agreement, Appellee further agreed that any violation of the non-

compete provision and the confidentiality provisions would cause Appellant to suffer irreparable

harm and thus Appellant could seek damages or injunctive relief against Franchisee in a court of

competent jurisdiction to address said harm.

On or around April 13, 2010, the Franchise Agreement between the parties expired. Appellee declined to renew its franchise and as a result, Appellant ceased receiving royalty payments, franchise fees and advertising assessments.  Shortly thereafter, pursuant to the terms of the Franchise Agreement, Appellee commenced an arbitration proceeding in Dallas Texas alleging, inter alia, breach of contract and fraud.  The gravamen of Appellee's arbitration complaint concerned Appellant's ownership interest in certain patents.  Specifically, Appellee avers that it entered into the Franchise Agreement based on representations it alleges MarbleLife made that it owned certain patents and trademarks and that MarbleLife possessed unique business formats which could be used in the operation of a MarbleLife franchise.  At the time the Arbitration Demand was made Appellant continued to operate its franchise despite the expiration of the Franchise Agreement and the covenant not to compete.  Consequently, Appellant initiated the MarbleLife Action seeking to enforce the covenant not to compete and seeking injunctive relief.

On December 23, 2010, after a three-day evidentiary hearing, the Court granted Appellant's motion for a preliminary injunction.  Despite the Court's Order directing Appellee to inter alia cease and desist in the operation of the MarbleLife Franchise in specified territories pending resolution of the arbitration proceeding, Stone Resources continued to operate in direct contravention of the Court's directives.  On January 3, 2011, Appellee filed a motion for reconsideration. (Doc. 40) In support of said motion, Paul Winterhalter, lead counsel for Appellee argued that he mistakenly believed the filing of the motion for reconsideration stayed the effectiveness of the Court's Order but could provide no legal authority for this belief.

On February 3, 2011, the Court heard argument on several pending motions, including

Appellee's motion for reconsideration.[2]  Thereafter, on February 11, 2011, the Court entered an

Order denying Appellee's motion for reconsideration. (Doc. 56)  The Court's Order also amended

certain portions of the preliminary injunction.  Specifically, the Order revised the deadlines set for

compliance with certain provisions of the December 23 Preliminary Injunction Order.

On February 16, 2011, still not having complied with the Court's December 23, 2010

Preliminary Injunction Order or the revised Order entered just five days earlier, Appellee filed a

voluntary petition for relief  in the United States Bankruptcy Court for the Eastern District of

Pennsylvania pursuant to Chapter 11 of the United States Bankruptcy Code. (Case number

11-11124) See (Doc. 58).  At the time of the filing of Appellee's petition there was a motion for

attorneys' fees, statutory fees and costs pending before the Court.  Said motion, filed by Appellant,

requested an award of $378,919.67 in attorney's fees, $21,903.01 in statutory costs and $ 11,872.45

in other expenses pursuant to the parties' contract, for a total of $412,695.13. 10-cv-2480 (Doc. 44.)

As a result of Appellee's petition for bankruptcy relief, the MarbleLife Action was placed in civil

suspense and the Court reserved judgment of the motion.

B.      Bankruptcy Court Proceedings

 On February 23, 2011 Appellant filed a motion for an order dismissing Appellee's

bankruptcy action, or in the alternative, an order granting MarbleLife relief from the automatic stay

provision of Chapter 11 of the United States Code to enforce the Preliminary Injunction granted by

---

[2] The Court also heard argument on a motion for bond filed by Appellee, an emergency  motion
for civil contempt and a request for sanctions for Appellee's failure to comply with the Court's
Preliminary Injunction, and a motion for attorneys' fees, both filed by Appellant.  By order dated
February 11, 2011 the Court granted Appellee's motion for bond and directed that Appellant post bond in
the amount of $25,000 within seven (7) days of the date of entry of the Court's Order in accordance with
Fed. R. Civ. P. 65(c).  See 10-cv-2480 (Doc. 55) Additionally, the Court denied Appellant's motion for
civil contempt.  The Court reserved judgment on Appellant's motion for attorneys' fees and costs and
later directed Appellant to file supplemental briefing and supporting documents for said motion.

this Court.  Appellant argued that Appellee's Chapter 11 petition was filed in bad faith and was

merely a litigation tactic to avoid complying with this Court's Orders and should therefore be

dismissed pursuant to section 1112(b) of the bankruptcy code.  In opposition, Appellee argued that

(1) the voluntary petition for relief was not filed in bad faith but was filed for the legitimate purpose

of business reorganization; (2) the petition is not a single creditor bankruptcy action; (3) Appellant's

claim can be addressed in the bankruptcy proceedings; and (4) there is no cause to enforce the

preliminary injunction.

On March 2, 2011, the Bankruptcy Court held a hearing on the Appellant's motion.  During

the hearing the Bankruptcy Court heard testimony from Joseph Smith, Stone Resource's sole

shareholder. In re Stone Res., Inc., 448 B.R. 361, 365 (Bankr. E.D. Pa. 2011).  Smith testified that

the petition for bankruptcy was filed because Stone Resources was in financial distress as a result of

this Court's grant of a Preliminary Injunction and was unable to fund an appeal of this Court's

Preliminary Injunction Orders. Id.  Also important to the Bankruptcy Court's decision was Smith's

testimony that Stone Resources had a Sovereign Bank Loan of approximately $87,500.00 dollars

which Smith averred that Stone Resources was unable to pay.  In fact. Smith testified that Appellee

was unable to make payments to any of its creditors.  Id. at 366.  According to Smith's testimony

Appellee had ceased doing business. Id. at 365.

 Richard Ritaco, publisher of Distinctive Living Magazine, also testified on behalf of

Appellee and stated that his company would be negatively impacted if the Preliminary Injunction

was not subject to the automatic stay because Stone Resources would no longer purchase advertising

from his company. Id. at 366.

Additionally, the parties stipulated to the admission of testimony from two other witnesses,

Don Haas, the property manager of a building located at Three Logan Square and Pat Keavney, the

property manager of a building located at One Logan Square. Id. Both Haas and Keavney averred

that Appellee contracted to provide maintenance to their respective buildings and both intended to

retain the services of Appellee, if Appellee was permitted to operate post petition. Id.

At the conclusion of the hearing the Bankruptcy Court found that Appellee's petition had

been filed in good faith as implicitly required by 11 U.S.C. § 1112(b)(1).[3] Additionally, the

Bankruptcy Court made the following findings and denied Appellant's motion to dismiss and

alternatively, denied Appellant's motion for relief from the automatic stay to enforce any provision

of the this Court's Preliminary Injunction Orders.

> First, the Debtor did not have sufficient income to fund an appeal from
> the Preliminary Objections or pursue the Texas arbitration. Second, the
> Preliminary Injunction prevented the Debtor's continued operations. The
> Debtor had ceased its business operations and laid off its staff of twelve
> employees each of whom were collecting unemployment insurance.
> Third, Movant had filed a motion in the District Court Litigating seeking
> a judgment in the amount of $400,000 for attorney fees, statutory costs,
> and expenses.

In re Stone Res., Inc., 448 B.R. 361 at 365.  Although the Court will expound further on the evidence

presented to the Bankruptcy Court, the Court finds it necessary to highlight that during the June 21,

201 hearing held before this Court on Appellant's appeal of the Bankruptcy Court decision, Paul

---

[3] Section 1112(b)(1) of Title 11 of the United States Code, provides, in part:

[O]n request of a party in interest, and after notice and a hearing, absent unusual
circumstances specifically identified by the court that establish that the requested
conversion or dismissal is not in the best interests of creditors and the estate, the court
shall convert a case under this chapter to a case under chapter 7 or dismiss a case under
this chapter, whichever is in the best interests of creditors and the estate, if the movant
establishes cause.

11 U.S.C.§1112(b)(1) .

Winterhalter, counsel for Appellee stated that as late as June 28, 2011, Stone Resources was still in business and completing projects.  Further, in email communication between counsel for MarbleLife and counsel for Stone Resources sent as an attachment to the Court, Mr. Winterhalter stated that he and his client "will *discuss* shutting down operations until [his return from vacation,] or completing existing residential jobs this week to avoid consequences to customers. (MarbleLife Letter, Jun. 28, 2001, attachment)  These admissions by counsel for Stone Resources make abundantly clear that the information presented to the Bankruptcy Court that Stone Resources had ceased business operations and had laid off its twelve employees was false.

To date, Appellee has failed to comply with several portions of the Court's Preliminary Injunction Order in flagrant disregard of the Court's directives.

**II.**                                      **<u>JURISDICTION</u>**

This is an appeal from a final Order of the United States Bankruptcy Court for the Eastern District of Pennsylvania which denied Appellants' motion for an order dismissing Appellee's bankruptcy action, or in the alternative, an order granting Appellant relief from the automatic stay provision of Chapter 11 of the United States Code.[4]  The Court exercises jurisdiction over this matter pursuant to 28 U.S.C. § 158(a)(1) and Bankruptcy Rule of Civil Procedure 8001.  Section 158 (a)(1) of Title 2b of the United States Code provides, in relevant part, that "[t]he district courts of the United States shall have jurisdiction to hear appeals . . . with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title."  28 U.S.C. § 158(a)(1).

---

[4] An order is considered final and appealable if it "ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment." <u>Catlin v. United States</u>, 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945).

Pursuant to Fed. R. Bankr. P. 8013, when reviewing an appeal form a bankruptcy court

> [a] district court or bankruptcy appellate panel may affirm, modify, or
> reverse a bankruptcy judge's judgment, order, or decree or remand
> with instructions for further proceedings.

Fed. R. Bankr. P. 8013.

### III.                              LEGAL STANDARD

A district court reviewing an appeal from bankruptcy court applies a clearly erroneous

standard to a bankruptcy court's findings of fact[5], plenary review over its conclusions of law, and

bifurcates mixed questions of law and fact to apply the appropriate standard to each.  See Wawel

Savings Bank v. Jersey Tractor Trailer Training, Inc., 580 F.3d 147 (3d Cir. 2009); Sterten v. Option

One Mortgage Corp., 546 F.3d 278, 282 (3d Cir. 2008); Berkley v. Commr. IRS, 192 B.R. 835, 837

(E.D.Pa.1996), aff'd 111 F.3d 125 (1997) (citing inter alia Universal Minerals Inc. v. C.A. Hughes &

Co., 669 F.2d 98, 102 (3d Cir.1981)); In re Sharon Steel Corp., 871 F.2d 1217, 1222 n.7 (3d Cir.

1989).  On review of the factual findings of a bankruptcy court, a district court must "give 'due

regard' to the opportunity of that court to judge first-hand the credibility of the witnesses."

Fellheimer, Eichen & Braverman, P.C. v. Charter Technologies, Inc., 57 F.3d 1215, 1223 (3d

Cir.1995).  A factual finding is clearly erroneous if it is "completely devoid of minimum evidentiary

support displaying some hue of credibility or … bears no rational relationship to the supportive

evidentiary data," Krasnov v. Dinan, 465 F.2d 1298, 1302-03 (3d Cir. 1972).  Additionally, where a

reviewing court is left with the definite and firm conviction that a mistake has been made it may set

---

[5]A "clearly erroneous" standard "is fairly stringent: 'It is the responsibility of an appellate court
to accept the ultimate factual determination of the fact-finder unless that determination either is
completely devoid of minimum evidentiary support displaying some hue of credibility or bears no
rational relationship to the supportive evidentiary data,'" Fellheimer, Eichen & Braverman, P.C. v.
Charter Techs. Inc., 57 F.3d 1215, 1223 (3d Cir. 1995).

aside a bankruptcy court's finding as clearly erroneous.  See United States v. United States Gypsum Co., 333 U.S. 364, 395, 92 L. Ed. 746, 68 S. Ct. 525 (1948).  In this appeal, the issue turns on a question of law and, therefore, this Court will apply plenary review.

IV.                    **DISCUSSION**

A.          The Bankruptcy Court's Decision Denying Appellant's Motion to Dismiss was

Proper.

"Chapter 11 bankruptcy  petitions are subject to dismissal under 11 U.S.C. § 1112(b) unless filed in good faith."  In re Integrated Telecom Express, Inc., 384 F.3d 108, 118 (3d Cir. 2004) The bankruptcy petitioner bears the burden of establishing that its petition has been filed in good faith. In re PPI Enterprises (U.S.), Inc., 324 F.3d 197, 210-211 (3d Cir. 2003).  The determination of whether a bankruptcy action was filed in bad faith is "a fact intensive determination better left to the discretion of the bankruptcy court."  In re Lilley, 91 F.3d 491, 496 (3d Cir. 1996) (quoting In re Love, 957 F.2d 1350, 1355 (7th Cir. 1992).  Accordingly, as this determination is one that concerns issues of fact this Court will review the Bankruptcy Court's decision on Appellant's motion to dismiss for abuse of discretion.  See In re Integrated Telecom Express, Inc., 384 F.3d at 118; In re Swedenland Dev. Group. 16 F.3d 552, 558 (3d Cir. 1994).  "[A]n abuse of discretion exists where the . . .court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact." In re SGL Carbon Corp., 200 F.3d 154, 159 (3d Cir. Del. 1999) (citing ACLU v. Black Horse Pike Reg'l Bd. of Ed., 84 F.3d 1471, 1476 (3d Cir. 1996)).

The bankruptcy code, 11 U.S.C. § 1112(b) governs the dismissal or conversion of Chapter 11 petitions.  This section provides in relevant part:

> The court may convert a case under [Chapter 11] to a case under
> Chapter 7 . . . or may dismiss a case under this chapter, whichever is
> in the best interest of creditors and the estate, for cause . . . .

11 U.S.C. § 1112(b).  Although there is no explicit mention of bad faith in 1112 (b) nor is there an explicit good faith requirement, "the courts of appeals that have considered  the issue have held that the absence of good faith constitutes "cause" to dismiss a Chapter 11 petition under § 1112(b)." <u>In re SGL Carbon Corp.</u>, 200 F.3d at 160.  In making the determination of whether a petition was made in bad faith, a bankruptcy court looks to the totality of the circumstances and may focus on the following factors, among others: (1) the nature of the debt, (2) the timing of the petition, (3) how the debt arose, (4) the debtor's motive in filing the petition, (5) how the debtor's actions affected creditors, (6) the debtor's treatment of creditors both before and after the petition was filed, and (7) whether the debtor has been forthcoming with the bankruptcy court and the creditors. <u>Id</u>.

In this case, after examining the totality of the circumstances, the Bankruptcy Court concluded that Appellee's filing was not done in bad faith.  This Court agrees.  In no way can the Bankruptcy Court's decision denying Appellant's motion to dismiss be found to constitute an abuse of discretion as it was based on a sound interpretation of relevant case law.

In evaluating the timing of the filing, the Bankruptcy Court noted that the filing's timing, just two days after this Court denied Appellee's motion for reconsideration does not in itself constitute bad faith, although it is certainly a relevant factor in a bad faith inquiry.  <u>Id</u>. Relying on <u>In re SGL Carbon Corp.</u>, the Bankruptcy Court reasoned that adverse litigation that places a debtor in an unhealthy financial state constitutes a legitimate reason for seeking relief pursuant to Chapter 11. The Court agrees with the Bankruptcy Court's reading of <u>In re SGL Carbon Corp.</u>  The Court is well aware that Appellee's petition was filed immediately after the Court's denial of Appellee's motion for reconsideration of the Court's grant of injunction relief; however, the Court is also mindful that generally "[c]ourts have allowed companies to seek the protections of bankruptcy when faced with

pending litigation that posed a serious threat to the companies' long term viability." In re SGL Carbon Corp., 200 F.3d at 164.  The timing, however suspicious, cannot alone justify the finding that Appellee's petition was made in bad faith.

Additionally, the Bankruptcy Court reasoned that Appellee could in no sense be considered a financially healthy debtor as according to the evidence presented at the hearing, Appellee had several other creditors who would be adversely affected by its inability to operate its business.  Of significance to the Bankruptcy Court's decision was Smith's testimony that Appellee had an outstanding loan of approximately $87,500.00 which Smith averred Appellee was unable to make payments on.  Although Appellee did not blatantly aver that it was in financial distress at the time of the filing,"[i]t is well established that a debtor need not be insolvent before filing for bankruptcy protection." In re SGL Carbon Corp., 200 F.3d 154 at 163.

Although the Court finds that the evidence presented by Appellee to support its contention that its filing satisfied § 1112(b)'s implicit good faith requirement was minimal, the Court cannot conclude that the Bankruptcy Court's decision denying Appellant's motion to dismiss was an abuse of discretion.  Satisfied with the credibility of the testimony before it, the Bankruptcy Court reasoned that the Appellee's petition was filed as an attempt to "preserve its value as a going concern that would in turn maximize the value of the bankruptcy estate. " In re Stone Res., Inc., 448 B.R. at 368. The factual findings do not appear clearly erroneous as required for this Court to reverse the determination of the Bankruptcy Court.  The evidence presented to the Bankruptcy Court, although scant, renders colorable the claim that Appellee's petition was filed in good faith for the legitimate purpose of business reorganization.  Accordingly, the Court will affirm the Bankruptcy Court's decision denying Appellant's motion to dismiss.

B.      The Bankruptcy's Decision Denying Appellant's Motion For Relief From the

Automatic Stay was in Error.

Having determined that the Bankruptcy Court's decision denying Appellant's motion to

dismiss was not in error the Court will now address the Bankruptcy Court's decision denying

Appellant's motion for relief from the automatic stay of section 362 of the code.  A bankruptcy

court's decision to grant a creditor relief from the automatic stay provision of the bankruptcy code is

reviewed for abuse of discretion.  In re Lippolis, 228 B.R. 106, 111-112 (E.D. Pa. 1998).

Pursuant to 11 U.S.C. §362 the general rule is that all non-bankruptcy proceedings pending

or commenced against a Chapter 11 petitioner are automatically stayed upon the filing of a petition

for relief under Chapter 11.  11 U.S.C. §362.  See also Brock v. Morysville Body Works, 829 F.2d

383, 387 (3d Cir. 1987).  This relief is also applicable to the enforcement of direct money judgments.

See id. at 389.  Specifically §362 (2) (a) stays inter alia the enforcement, against the debtor or against

property of the estate, of a judgment obtained before the commencement of the case under this title.

11 U.S.C. § 362.

"The purpose of the automatic stay provision is to afford the debtor a "breathing spell" by

halting the collection process. It enables the debtor to attempt a repayment or reorganization plan

with an aim toward satisfying existing debt."  In re Siciliano, 13 F.3d 748, 750 (3d Cir. 1994) (citing

Maritime Electric Co. v. United Jersey Bank, 959 F.2d 1194, 1206 (3d Cir. 1991)).  Creditors are

also afforded protection by the stay as it ensures an orderly liquidation procedure and prevents

dissipation of the debtor's assets before orderly distribution to creditors can be effected.  Ass'n. of St.

Croix Condominium Owners v. St. Croix Hotel Corp., 682 F.2d 446, 448 (3d Cir. 1982).  In that vain

the automatic stay is designed to prevent the enforcement of all claims against a Chapter 11 debtor.

Section 101(5) of the Bankruptcy Code defines "claim" as:

-13-

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured.

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(12).  What exactly constitutes a "claim" under the code has been the subject of much discussion.[6]  The Court finds the Supreme Court's decision in Ohio v. Kovacs, 469 U.S. 274, 105 S. Ct. 705, 83 L. Ed. 2d 649 (1985) instructive.  There the Supreme Court addressed the issue of whether obligations imposed upon a debtor pursuant to the equitable remedy of an injunction are "liabilities on claims" and therefore subject to the discharge under the bankruptcy code.

In Kovacs, the debtor was ordered by a state court injunction to remove certain waste products from an environmentally contaminated site. Id. at 284.  Failing to comply with the injunction, the state court appointed a receiver to take possession of the debtor's property.  Id. Debtor then filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  Id.  Upon appeal the Supreme Court discharged the debtor's obligation under the injunction to clean his property reasoning that it was a debt or claim within the meaning of the code.  In doing so the Supreme Court reasoned that where an equitable injunctive remedy "gives rise to a right to payment" said equitable relief will constitute a claim within the meaning of 11 U.S.C. § 101(5).  In such cases, the obligations imposed by the injunction are "debts" which are discharged.  Once bankruptcy had

---

[6] The code specifically includes within the definition, "claim[s] against the property of the debtor." 11 U.S.C. § 102(2).  Additionally, a cause of action in tort is a claim under the code. See, e.g., Fogel v. Zell, 221 F.3d 955 (7th Cir. 2000) (customers' claims for defective pipe were claims in debtor's bankruptcy).

been filed the state court's injunction had essentially been converted into an obligation to pay money as the receiver only wanted money to defray the costs of the cleanup.

Circuit Courts across the country have adopted the Supreme Court's reasoning and have also held an equitable remedy will "give rise to a right of payment" and therefore be deemed a "claim," when the payment of monetary damages is an alternative to the equitable remedy. See In Re Matter of Udell, 18 F.3d 403, 407 (7th Cir. 1994) (holding "one example of a 'claim' is a right to an equitable remedy that can be satisfied by an 'alternative' right to payment"); Air Line Pilots Ass'n v. Cont'l Airlines, 125 F.3d 120, 135-36 (3d Cir. 1997) (explaining that an equitable remedy of seniority integration could give rise to a right to payment and thus fall within the Bankruptcy Code's definition of claim); In Re Ben Franklin Hotel Assocs., 186 F.3d 301, 305 (3d Cir. 1999) (holding that a claim for reinstatement into a partnership agreement is not a claim when the partnership was comprised of a unique business opportunity not capable of valuation).

However, some causes of action are not claims subject to discharge.  At issue here is whether a preliminary injunction ordering a debtor to inter alia cease and desist in the operation of a business in accordance with the terms of a covenant not to compete is a claim within the meaning of the code. The Court finds that it is not.  Where the only remedy available for a cause of action is an equitable remedy . . . that claim is not dischargeable in bankruptcy.  In re Weinhold, 393 B.R. 623, 629-630 (Bankr. E.D. Wis. 2008) (citations and quotations omitted).

The proper inquiry here is whether Appellant's right to an injunction "gives rise" to an alternative or other corollary right to payment of liquidated damages.  Stated differently, the analysis turns on whether monetary payment is a "viable alternative" to an equitable remedy for a cause of action.  In re Ben Franklin Hotel Assoc., 186 F.3d 301, 305 (3d Cir. 1999).  Here, when this Court looks at the substance of what Appellant seeks, it is abundantly clear that it is not a claim in the

sense of the statute. Appellee's compliance does not require the expenditure of money.  See Kennedy v. Medicap Pharms., Inc., 267 F.3d 493, 497 (6th Cir. 2001) (noting that "[t]he right to equitable relief constitutes a claim only if it is an alternative to a right to payment or if compliance with the equitable order will itself require the payment of money.").  Id.

The very nature of the MarbleLife Action makes clear that monetary relief is not a viable alternative to the relief  Appellant seeks.  Appellant seeks the enforcement of a preliminary injunction barring Appellee from continued violation of the non compete provision entered into by Appellee on April 3, 2000.  Monetary damages are not a viable alternative as Appellant is continuously harmed by Appellee's breach of the non compete provision.  Aside from the contracts that Appellant is losing by Appellee's violation of the covenant not to compete and this Court's Preliminary Injunction Orders, Appellee is also affected by the harm Appellee's actions have done to its other franchise agreements.  Appellant avers that other franchisees have stopped paying franchise fees as a result of Appellee's breach.  The longer Appellee is permitted to skirt this Court's numerous orders the more detrimental the harm that will be inflicted upon Appellant.

In no sense can the preliminary injunction issued by this Court be deemed a "claim" within the meaning of the code as compliance with this Court's Preliminary Injunction Orders does not require the expenditure of money, although it limits the ability to earn money. See R.J. Carbone Co. v. Nyren (In re Nyren), 187 B.R. 424, 425 (Bankr. D. Conn. 1995) ("[A]n employer's right to an injunction to prevent a former employee from violating a covenant not to compete does not qualify as a "claim" dischargeable in the employee's bankruptcy case since no expenditure of money is required to comply, and the employer is accordingly entitled to relief from the automatic stay to pursue state-court injunctive relief."); In re Udell, 18 F.3d 403, 408 (7th Cir. Ind. 1994) ("[A] right to an equitable remedy for breach of performance is a "claim" if the same breach also gives rise to a

-16-

right to payment "with respect to" the equitable remedy.").

The Court is mindful that portions of the injunction granted by the Court directed that Appellee turn over certain property to Appellant.  It is clear that property of a debtor is a claim within the meaning of the code.  However, the Court looks at the substance of the property directed to be turned over.  This Court's Preliminary Injunction Orders directed that Appellee do the following:

b.    Within fifteen (15) business days after entry of this Order, Stone Resources shall provide to MarbleLife a list of Stone Resources' existing customers since May 2000,  as well as all invoices on file for such customers;

c.    Stone Resources shall immediately take all reasonable steps necessary to relinquish and transfer to MarbleLife's control the phone number 610-565-5666, and all other phone numbers, cell phone numbers, fax numbers, email addresses, Web site domains and fictitious names (or "doing business as" names) used by Stone Resources;

d.    Within fifteen (15) business days after entry of this Order, Stone Resources shall provide to MarbleLife a list of all other landline, cellular, VoIP, facsimile, and/or telecopy numbers, and email addresses that have been used in association with Stone Resources' business as a MarbleLife franchisee or in connection with offering surface restoration and cleaning products and services in competition with MarbleLife after the expiration of the Franchise Agreement; and Stone Resources shall thereafter reasonably and in good faith and at the election of MarbleLife either (i) assist MarbleLife in forwarding and/or patching such additional numbers to or through a MarbleLife-controlled number, or (ii) by way of consent and/or execution of any necessary documents, assist MarbleLife in assuming for its use such additional numbers;

e.    Stone Resources shall immediately return to MarbleLife any and all MarbleLife business system manuals, including any amendments and supplements thereto, as well as any authorized or unauthorized copies, reproductions, or digital scans of such manuals, and all other documents or forms containing the MarbleLife mark or logo, including business cards and invoice

forms;

f.       Stone Resources shall immediately take all reasonable steps necessary to relinquish and transfer to MarbleLife's control its advertising rights in all Distinctive Living publications and all other advertising used by Stone Resources.

The property that was directed to be turned over are all items which were utilized in the operation of Stone Resources franchisee.  The very operation of this company is forbidden by the Court's Preliminary Injunction Orders.  In Sheerin v. Davis (In re Davis), 3 F.3d 113, 116 (5th Cir. 1993), the Fifth Circuit held that certain equitable remedies affecting realty were not dischargeable because no alternative money judgments could be had in lieu of remedies.  In In re Davis , the Plaintiff, James Sheerin, a partner in W.H. Davis Company alleged he was fraudulently deprived of an interest in a partnership that owned real property.  Id. at 114.  Accordingly, Sheerin sought relief in state court and obtained a final judgment in his favor.  Id.  Sheerin was awarded the equitable remedies of a resulting trust, partition in kind, and deed reformation. Id.  Defendant then filed a petition for relief under Chapter 11 and sought to have the judgments entered against him in state court discharged.  Upon appeal the Fifth Circuit declined to discharge the equitable remedies reasoning that monetary damages were not a sufficient alternative to the equitable remedies Plaintiff in In re Davis had been awarded in state court. Id. at 116-17.

Similarly here this Court awarded Appellant the equitable remedy of a Preliminary Injunction directing Appellee to inter alia cease and desist from engaging, participating or assisting in any business or offering within specified territories in which MarbleLife has a franchise or a company office; (i) any service or product related to the restoration, repair, and care of marble, granite, concrete, and other types of inorganic and organic surfaces, (ii) any service or product related to the treatment, coating, and sealing of such surfaces, and (iii) any service or product related

to the restoration, repair and care of grout.  Appellee like the Defendant in <u>In re Davis</u> then filed for bankruptcy protection and sought to have the equitable remedies discharged.  Appellee contends that its failure to perform the obligations imposed by this Court's grant of a preliminary injunction would justify an award of money damages, and are thus dischargeable.  This Court disagrees.  "The ability of a debtor to choose between performance and damages in some cases is not the same as a debtor's liability for money damages for failing to satisfy an equitable obligation. . . .While section 101(5)(B) encourages creditors to select money damages from among alternative remedies, it does not require creditors entitled to an equitable remedy to select a suboptimal remedy of money damages."  <u>In re Davis</u>, 3 F.3d at 116. (citing <u>In re Chateaugay Corp.</u>, 944 F.2d 997, 1007-08 (2d Cir. 1991).  The Court finds that monetary damages are not a viable alternative to the relief Appellant sought and was awarded in this Court.

The Court also finds the Sixth Circuits decision in <u>Kennedy</u> instructive.  The Kennedys entered into a franchise agreement to operate a Medicap Pharmacy. Kennedy, 267 F.3d at  495.  Pursuant to the terms of the franchise agreement, the Kennedys "could not 'own, operate, consult with, or be employed by or in a drug store or pharmacy located within two (2) miles of the Medicap Pharmacy (R) store licensed hereunder' for a period of two years following expiration or termination of the franchise agreement." <u>Id</u>.  During the term of the franchise agreement, the Kennedy's stopped paying royalty fees.  Consequently, Medicap instituted an action in state court against the Kennedys for nonpayment. <u>Id</u>.   Shortly thereafter, the Kennedys terminated the franchise agreement.  <u>Id</u>.  "The Kennedys concede that they breached the covenant not to compete by working in a pharmacy known as Kennedy Pharmacy at the same location as the Medicap Pharmacy."  <u>Id</u>.  Accordingly, Medicap brought an action to enjoin the operation of the Kennedy Pharmacy in violation of the covenant not to compete. <u>Id</u>. Like Appellant here, the Kennedys then filed a bankruptcy petition.  Medicap then

filed an adversary proceeding requesting a determination that Medicap's right to equitable relief for breach of the covenant not to compete was not dischargeable in bankruptcy.  <u>Id</u>. Medicap also requested a permanent injunction enforcing the covenant not to compete.  <u>Id</u>.

The Sixth Circuit granted the inunction enforcing the covenant not to compte and reasoning that "compliance with an injunction would not require the expenditure of money" and therefore "Medicap's  right to equitable relief does not, therefore, equate to being a claim.  <u>Id</u>. at. 497, 498. The Kennedys would simply be required to cease operating the pharmacy in violation of the franchise agreement."  <u>Id</u>. The Kennedy Court focused on the substance of the equitable relief sought, and reasoned that Medicap was not seeking the payment of money and the payment of money would not be a viable alterative to the equitable relief awarded as the injunction was designed to provide relief where there is no adequate remedy at law. <u>Id</u>.  Like the Kennedys, Appellee breached a covenant not to compete and this Court finds that the only adequate  remedy is an injunction enforcing the non compete clause.  Accordingly, the Court will reverse the Bankruptcy Court's decision to the extent that it denied Appellant relief from the automatic stay.

   C.  The Bankruptcy Court Did Not Issue an Advisory Opinion Nor Did The Bankruptcy Court Decide an Issue Which was not Properly Before it.

Appellant argues that the Bankruptcy Court's decision with respect to the applicability of the automatic stay to all the provisions of the preliminary injunction was in error as this issue was not properly before the Bankruptcy Court.  This Court disagrees.  Appellant expressly sought relief from the automatic stay, and in doing so, placed this issue squarely before the Bankruptcy Court.  The Bankruptcy Court stated clearly that "[Appellant], [m]ovant seeks relief from the automatic stay to enforce the Preliminary Injunction pursuant to § 362(d)(1).  <u>In re Stone Res., Inc.</u>, 448 B.R. at. 368. The Court declines to expound on this argument as it has already found that the Bankruptcy Court's

decision denying Appellant relief from the automatic stay was in error.

**V.**                              **CONCLUSION**

For the foregoing reasons the Court will reverse the Bankruptcy Court's decision to the extent that it denied Appellant's motion for relief from the automatic stay.

**BY THE COURT:**

**/s/ Petrese B. Tucker**

_____

**Hon. Petrese B. Tucker, U.S.D.J.**